OF THE

# STATE OF ARKANSAS,

AT THE

# NOVEMBER TERM, 1880.

[Continued from Vol. 35.]

---

## GREER v. TURNER.

| 36 | 17 |
| 68 | 586 |

1. CHANCERY PRACTICE: *Filing supplemental bill after return of cause from supreme court.*
   Upon the return of a cause in equity from the supreme court to the circuit court for further proceedings, the plaintiff may, by supplemental bill, plead new matter occurring since the final submission of the cause in the circuit court.

2. MORTGAGEE: *Must account for rents, etc.*
   The owners of a mortgage must account to the owner of the equity of redemption for such rents of the mortgaged premises in their possession as they might have got, and for payments made upon the debt by the mortgage debtor. From such rents the trustee in the mortgage can not relieve them.

2—36

Greer v. Turner.

3. SAME: *Taking possession after tender of the debt is a trespasser.*
   A mortgagee in taking possession and using the mortgaged premises after tender of the mortgaged debt, becomes a trespasser and tortfeasor.

4. TRUSTEE IN TRUST MORTGAGE: *Not agent for mortgagor.*
   A trustee in a trust mortgage is not the agent for the mortgagor to manage the mortgaged premises, and has no authority to rent them.

5. TENDER OF MORTGAGE DEBT: *Effect of.*
   The tender of the mortgage debt stops interest on the debt, and as long as it is kept good, takes the place of the land as a security, and paralyses the power to sell the mortgaged premises for payment of the debt.

6. MORTGAGOR: *Right to possession.*
   A mortgagor is entitled to the use of the mortgaged lands until dispossessed by the mortgagee, trustee, or a competent court.

7. MORTGAGE: *Prima facie evidence of debt.*
   A mortgage for a specified debt is *prima facie* evidence of the debt, in a suit between the mortgagee and assignee of the mortgagor.

8. MORTGAGEE: *When accountable for interest on rents.*
   A mortgagee should be charged with interest on rents received by him after the mortgage debt has been paid.

9. SAME: *Giving possession to an insolvent is liable for rents.*
   If a mortgagee abandon possession of the premises to an insolvent tenant, he is liable to the owner for the rents during such possession.

CROSS-APPEALS from *White* Circuit Court in Chancery. Hon. J. N. CYPERT, Circuit Judge.

*Coody*, for appellants:

Rents are paid for *possession*, and are due to the person from whom the land passed. 3 *Kent's Com.*, p. 463.

Mandate of this court made it obligatory on court below to enter a specific decree. 13 *Ark.*, 103; 29 *Ark.*, 185. Hence, the supplemental bill improper. See, also, 5 *Ark.*, 202; 29 *ib.*, 97-8; 13 *Ark.*, 654; *St. Eq. Pl.*, secs. 333, 336, 338; 2 *Madd.*, 53; *Hoff. Ch. Pr.*, p. 392; *Brodie v. Watkins*, 32 *Ark.* Supplemental bill is for recovery of land by one out of possession, and will not lie. 30 *Ark.*, p. 585; 3

*Metc.*, 55; 23 *Ark.*, 755; 24 *ib.*, *p.* 439. Or, if title was in trustee, Cypert, the rents belonged to him, and complainant could only ask that they be applied on the mortgage. 11 *Ill.*, 69. He became the trustee, also, of complainant, and agent of both parties. *Jones on Mort.*, secs. 1117, 1121. Lessee liable only to trustee for rents. 15 *Ark.*, 102. Law of the case that Turner is not entitled to rents of 1873. 31 *Ark.*, 451-2; 24 *Ark.*, 545.

Mortgagor in possession not responsible for rents, and may appropriate them. 13 *Mich.*, 36; 22 *California*, 255; 12 *Vt.*, 695; *Jones on M.*, 667.

Greer not responsible for rents of 1877, having given up possession in March. *Jones on Mort.*, secs. 1122, 1123; 5 *Page*, 9; 21 *Maine*, 465; 21 *Miss.*, 88. The court took possession by a receiver. Rents for 1874, 1875 and 1876, settled with Cypert, who was trustee for both parties. *Jones on M.*, sec. 1771; 18 *Grat.*, 244, 278; and tenant liable to him for rents. *J. on Mort.*, secs. 1123, 1152; 29 *Ark.*, 527; 27 *ib.*, 50.

Beneficiaries have no right to possession. *Jones on M.*, secs. 80, 664; 12 *Allen*, 30; 28 *Ark.*, 75; 30 *Ark.*, 523. Cypert alone accountable for rents. *Jones on M.*, sec. 1114. Appellants compellable to pay to him. 27 *Ark.*, 50; 29 *ib.*, 153; 31 *ib.*, 470; 39 *Vt.*, 105.

Turner can only recover what rents the mortgagee or trustee actually received. 2 *Washburne*, 223; *Jones on M.*, sec. 1123.

On exceptions: Greer not responsible for the ferry receipts or rents. 26 *Ark.*, 464. Mortgagor entitled to reasonable repairs. 2 *Sum.*, 108; 15 *Ill.*, 881. May under some circumstances make improvements (14 *Gray*, 132; *Jones on M.*, secs. 1126, 1129), even although they exceed rents. 2 *Cush.* (*Mass.*), 400; 5 *Oregon*, 292; 124 *Mass.*, 242. Sup-

plemental bill an abandonment of the tender.    *Jones*, 899 ;
*Cole v. Moore*, 34 *Ark.*, 582.

Can be no judgment against Baucum.    He went out of
the firm in May, 1875.


*Turner, pro se:*

Supplemental bill necessary and proper for matters oc-
curring after decree below.    *St. Eq. Pl.*, secs. 332–337; 16
*Ark.*, 181; and for these in question defendants were liable
to account in discharge of the mortgage.    1 *Hil. on M.*,
439, secs. 1, 2, 3, 4, 8, 9, 10, 11; 2 *Jones on M.*, 1117–1135;
2 *Lead. Ca. in Eq.*, 1977, 2007.

Greer could not relieve himself of rents of 1877, by
abandoning the property to an insolvent.    1 *Gill. & J.*
(*Md.*), 270; 2 *Leading Ca. in Equity*, 1960, 1980; 1 *Hilliard
on M.*, 446, sec. 8; 2 *Wash. R. P.*, 207; 2 *Jones M.*, 1123; 6
*Gray*, 556; 19 *Pick.*, 398.

Error to refuse appellee interest on annual rents, and to
allow defendants for repairs and taxes.    2 *Lead. C. in Eq.*,
secs. 1977, 1978; 1 *Hill. on M.*, 46, sec. 12; 1 *Russell*, 530; 13
*Wis.*, 606; 3 *Story's Eq. Ju.*, 1016, *a.*    As to repairs and
taxes, see 18 *Ark.*, 34; 2 *Story's Eq. Ju.*, 1016, *a, b, c, note;* 1
*Saxt.*, 123; 1 *Hill. on M.*, 452 (4th ed.); 2 *Leading Cases in
Eq.*, 2010; 64 *Penn. St.*, 315; 6 *Beav. Rep.*, 246; 6 *Gill. &
J.*, 285; 9 *Wis.*, 539; and there must be *proof* of necessity
for them.    4 *Allen*, 538; and also averment of it in plead-
ings.    *Story's Eq. Pl.*, 257 and 264; *New. Pl. and Pr.*, 723;
29 *Ark.*, 500.    There must be claim made in nature of set-
off or counter-claim.    *New. Pl. and Pr.*, 548–9, 606–7; 25
*Cal.*, 38; *Marr. v. Lewis*, 31 *Ark.*    Answer in this case, no
counter-claim.    *Newman Pl. and Pr.*, 619, 621, 548; *Pom-
eroy's Leg., Rem.*, sec. 748.    Error in restricting damages for
waste to such as was *willful.*    2 *Wash. R. P.*, 128; 1 *Hill.*

*on Mort.*, 418, *note c ;* 2 *Halst.*, 518. Defendants chargeable with full value of rents—have kept complainant out. *Phillips v. Sylvester*, *L. R.* 8, *ch.* 173; and they will be chargeable with the highest amount warranted by the evidence. 31 *Penn.*, 131.

Can not appropriate payments to other debts without pleading and proving them. 6 *B. Monroe*, 6. And, even if other debts existed, and debtor did not appropriate, payments should go to the mortgage. 2 *Har. & Johnson*, 402.

Greer & Baucum, however, were trespassers not entitled to rights of mortgagees—this by reason of the tender. 2 *Jones on Mort.*, 886, 887, 891, 1798–99; 18 *John. (N. Y.)*, 110; 6 *Hill.*, 65; 21 *N. Y.*, 343; 65 *N. Y.*, 311; 12 *Mich.*, 270; 13 *do.*, 303; 2 *Ld. Ray.*, 916. Not to be allowed rents on improvements made by themselves.

NOTE—Much of the argument on both sides, was upon the exceptions to the Master's reports, on the evidence in the transcript.

### STATEMENT.

EAKIN, J. It was ruled, in this cause (see 31 Ark., 430), that Turner, by virtue of his redemption from the purchaser at execution sale, had become the owner of the equity of redemption in the lands in question, subject to the debt secured thereon by the deed of trust of which Greer & Baucum were the owners. The cause was remanded, with instructions to the effect that if Turner should fail to make good his tender or pay the debt on a day to be fixed for the purpose, the lands should be sold and the proceeds applied to the debt, interest and costs— the surplus to go to Turner. It was further held that Turner, when he assumed to rent the lands to Watkins, on the fourteenth of January, 1873, had no such interest in the lands as would entitle him to the rents from Watkins, the

legal title being then in the trustee; and that he should be enjoined from their collection.

On the return of the mandate to the court below, Turner, on the twenty-sixth of June, 1877, filed a supplemental bill, stating:

That, in November, 1873, after the first submission of the cause below, the trustee, Cypert, at their request, had transferred the possession and control of the lands to Greer & Baucum;· that they, through Watkins, as their agent, held possession until the twenty-fifth of April, 1875, when Baucum sold out to Greer; that Greer had continued in possession until he abandoned it, in the spring of 1877, leaving Watkins in possession of all the property, including a ferry and warehouse at a landing upon the premises; and that Greer & Baucum had, as above indicated, had the pernancy of the rents and profits, which were of the annual value of $2,500. He further charged that, in the fall or winter of 1873, they had received from Watkins a large amount of cotton, worth $3,000, and had, through their tenants, committed waste, and cut and sold large quantities of cord-wood and stave timber, to unknown amounts. He claimed that, thereby, their secured debt had been largely overpaid, and asked an account against them, and that a receiver be appointed to secure the rents of 1877, and let the lands, etc., for 1878, unless the suit be sooner determined.

A motion to strike out the supplemental complaint, and a demurrer to it for want of equity, were successively made and overruled, and a receiver was appointed as prayed.

Greer & Baucum answered, admitting their possession for the years 1874 and 1875, but say they held under a ·contract with the trustee, with whom they had settled, and that they had credited the net rents upon their mortgage.

That Greer had so held and in like manner settled in 1876. They show the settlements, and set forth specific amounts.

They deny their responsibility for the rents of 1873. They admit having received from Watkins, that winter, thirty-three bales of cotton, but claim that he was indebted to them, otherwise, for advances and supplies, to an amount larger than the value of the cotton, and they appropriated it to that debt. They deny the waste and cutting of timber. Greer denies his responsibility for the rents of 1877, saying that, in February of that year, he formally abandoned to the trustee, all possession of the property. They claim a balance as still due them under the deed of trust.

Turner then amended his complaint, charging that Greer, after the former decision of this court, to avoid responsibility for the rents of 1877, abandoned to Watkins the possession of all the property, except the landing and warehouse, which he retained and used until April. He then abandoned them also to Watkins, who was wholly insolvent.

He also charges Greer & Baucum with waste and injury to the lands from bad husbandry. These allegations were duly traversed.

The receiver reported, in effect, that he had collected and brought into court $1,100, the full value of the land rents for 1877, and that he estimated the value of the ferry rents at $150, and the warehouse at $600, in all $750, which he was unable to collect; and further, that he had let the premises for 1878 for the aggregate sum of $1,790.65.

The cause was heard on the seventh of August, 1878. The Chancellor found that complainant, Turner, had made a valid tender of the whole debt on the seventh of March, 1873, whereby he acquired a right to the possession of the property,

and the rents and profits; that Watkins, being in possession, had attempted to convey the property to Greer, in February, 1873; that the trustee had, in the fall of 1873, at their request, put Greer & Baucum in possession of the property, as beneficiaries under the trust; and that they had received a part of the produce of 1873 from Watkins, without any sufficient proof of any other debt to which they might appropriate it.

Upon such findings, he held that Greer & Baucum were liable, on account with complainant, for the rents of the premises from the date of the tender to the end of the year 1875, regardless of any contract made by them with the trustee; that Baucum had at that time transferred all his interest in the secured debt to Greer, who remained in possession until some time in April, 1877, and then abandoned the possession to Watkins, who was insolvent, making himself thereby liable to account with complainant for the rents of 1876, and so much of the rents of 1877 as could not be collected by the receiver. Further, that Greer & Baucum were entitled to compensation for such repairs as were necessary for the protection of the crops, but not for improvements, clearings and new houses; and also for taxes paid by them, at the value of the scrips used by them for the purpose; and that they were chargeable for any damages incurred by reason of willful neglect, improper cultivation and bad husbandry. A special Master was appointed to take and state an account in accordance with the facts and principles announced, taking the sum of $3,536 as due, without any interest from the time of the tender; estimating the net rents and profits from 1873 to 1877 inclusive, together with wanton waste—making separate statements for each year; and to report the excess, if any.

The defendants excepted to each and all the findings and

rulings of the court, and complainant excepted, on his part, to so much as denied him interest on the rents, and confined his damages to willful waste, and allowed defendants compensation for taxes and repairs.

The Master reported with an account stated. In making it, he had estimated the area of land in cultivation each year, charging defendants therefor at the rate of $3.50 per acre for the year 1873, and $3 per acre for subsequent years, down to 1876 inclusive. The rents of the ferry were charged each year at $300, and of the warehouse at $600; nothing was charged for waste, and credits run through the account for taxes and repairs.

His statement shows that the secured debt was satisfied in 1875, by such application of rents, and that there had accrued a debit on the other hand against Greer, which, added to those of succeeding years, made a balance against him of $3,462.25. The charge for 1877 had been taken at $750, thus allowing for the $1,100 collected by the receiver on the lands, and holding Greer liable for the uncollected rents on the ferry and warehouse.

The complainant excepted to this report for many reasons, substantially as follows: Because no allowance was made for the cotton received from Watkins; the rental values were too small; no interest was calculated on the rents; the allowance for taxes and repairs was excessive, without evidence and unauthorized, in favor of mere trespassers; and because no allowance was made him for damage to the premises. All were overruled.

Defendants excepted substantially because the rental charges were excessive; the allowance for repairs too small; Greer had been charged with rents of 1873, and 1877 with ferry rents and rent of the gin. These exceptions were overruled.

On the part of defendants other exceptions were sustained, to wit: That they had been charged with rents upon too much area;. that Greer had not been allowed the cost of a cotton press put there by himself, nor for taxes of 1875, and had been charged with rents on a part of the land which he had himself cleared.

The Chancellor reformed the account accordingly, taking off thirty-five acres from the area each year—making, at $3 per acre, $525. He allowed a further credit to Greer of $114 for taxes of 1875, and $303 for the press—thus reducing the balance found against Greer to $2,520.25; for which a decree was rendered.

Baucum was found to have given up the premises before the debt was satisfied. The whole legal and equitable title to the lands was vested in Turner.

The costs of the suit, up to the time of filing the mandate of this court below, were decreed against Greer, Baucum and Watkins; and after that, against Greer & Baucum alone.

The cause is again brought here on the appeal of defendants, and Turner makes his cross-appeal.

## OPINION.

1 CHANCERY PRACTICE:

Filing supplemental complaint after return of case from the supreme court. It is contended that upon the filing of the mandate from this court, the Chancellor should have proceeded, at once, to enter such a decree as was indicated in the opinion; and that no supplemental complaint should have been entertained.

The usual directions on remanding a cause, when this court deems it advisable to remand at all, are for further proceedings consistent with the law declared, and facts found, by the written opinion.

This becomes the law of the case, and as to facts found,

*res judicata.* Consistently with these it is not generally intended to trammel the proper courts of original jurisdiction, by precluding them from any steps which may be within the proper scope of the suit, and necessary to complete justice between the parties in reference to its subject-matter. The matters of this supplemental complaint could not have been considered on the first submission below, nor here, on the former appeal. They occurred *pendente lite.* Chancery delights in closing in one suit, all litigation concerning the subject-matter down to the time of final submission. Otherwise, it would be interminable.

If the Chancellor had refused to consider this supplemental bill its matter would have afforded grounds for another suit, with additional delays and expenses. It is equitable on its face.

The Chancellor exercised a proper discretion in refusing to strike it out, and did not err in overruling the demurrer.

It is the law of this case, that Turner can not demand of Watkins the rents of 1873. It consists with this, however, to hold that the secured creditors, who have no other right or interest in the lands than as a security for the debt which they had acquired from Mrs. Dougan, should be chargeable with such rents as they might have got, or with payments made by Watkins which they should have appropriated in exoneration of Turner's equitable estate.

2. MORTGAGEE: Must account for rents, and payments on the debt

They were not entitled, with or without the consent either of Watkins or the trustee, to use Turner's land for any other purpose. It did not concern them that Turner could not recover the rents of 1873 off Watkins.

If they received them from Watkins as rents, or should have done so, they should be applied to the lien of the Dougan debt, although they may thus inure to Turner's benefit.

The proof shows that, throughout, Greer, Baucum and Watkins were acting in amity, and in hostility to Turner's claim. Watkins, in February, 1873, made to Greer a conveyance in trust of such rights in the land as he had, to secure a note then due to Greer & Baucum of $614.74, and a further sum of $1,500 for supplies to be furnished during the year 1873, with power to take possession and sell, if said debts were not paid by the twenty-fifth of December, 1873. It had no other effect as to the lands claimed by Turner, than to put Greer in control, by way of estoppel as against Watkins himself after the twenty-fifth of December following.

In March they refused Turner's tender, Watkins being then in the possession. In the fall of the year they obtained permission of the trustee, also to control the land, and during the fall or winter received from Watkins thirty-three bales of cotton out of the products.

3. Taking possession after tender of the debt is a trespasser.

Strictly, in all their dealings with the land after Turner's tender, they were trespassers and tortfeasors. Such is the logical result of the former opinion. Every vestige of right which Watkins had, had passed to Turner by force of the sheriff's deed. They could derive nothing from the trustee.

4. TRUSTEE: In a mortgage, not agent of mortgagor to manage the land.

He was not the general agent to manage the land, either of Watkins or of Turner, who took Watkins' place. He was specially empowered only to sell the land in case the debt was not paid. The tender paralyzed that power as

5. TENDER OF MORTGAGE DEBT: Paralyzes power of sale.

long as it was kept good. The injunction against a sale was proper, and did not vest the power in the trustee to rent, instead; nor to place the land in the hands of the creditors to be used. Had it been necessary or advisable either party might, on proper showing, have had a receiver to act for all parties, under direction of the court.

Nevertheless, it must not be overlooked that under the

former decisions of this court, they may well have supposed, in all good faith, that the equity of redemption, which Watkins had, did not pass to Turner, and did pass, by the second trust-deed, to Greer. They would have waived all claim to the land as security for other debts by acceptance of the tender.

It would be hard measure, under the circumstances, to consider their refusal of it, as willful, and subject them to the severer rules applicable to trespassers.

The next question is, did they do any act rendering them liable for the rents of 1873 after the tender? Watkins, as against Turner, has been already held entitled to the possession for that year. There is no proof that Greer & Baucum took actual possession before they obtained it from Cypert in the fall. It is not clear upon any principle that they might have been able to coerce the payment of rent from Watkins by virtue of their ownership of the secured debt. The rule is that a mortgagor is entitled to the use of the lands, until dispossessed by the mortgagee, trustee, or a competent court. Their refusal of the tender did not give them any greater control of the lands, or, in itself, subject them to liability for the rents. It only stopped interest, and as long as it was kept good, took the place of the land as a security.

6. Mortgagor entitled to possession.

5. Tender of Mortgage Debt: Stops interest, etc.

Their liability for rents, as such, began, not with the tender, but with the transfer of the control of the property by the trustee in the fall. The rent of the lands for the remainder of the year can not have much estimable value, and the rents of the warehouse and ferry for that short period, can not be easily, on the proof, separated from the profits of the whole winter season extending into the spring of 1874. The annual allowance for rents of the warehouse and ferry, after that, seems to us liberal enough, equitably

to cover that fraction of time; and we think the Chancellor erred in directing an account of any *rents* for the year 1873.

The Chancellor found that Watkins had paid Greer & Baucum a considerable amount of cotton, the product of the land during 1873, and that there was no proof of any other debt to which it might be properly appropriated. The logical result of such finding should have been a direction to the Master to take an account of its value and credit it on the first trust deed. He did not do that, however, evidently supposing that the receipt of the cotton only rendered Greer & Baucum responsible for rents. To this view of the case Turner seems to have assented at the time, as his exceptions to the decree of reference do not cover this point.

7. MORT-
GAGE:
*Prima*
*facie* evi-
dence of
debt.

The finding of the Chancellor as to this fact is not satisfactory. That there were other debts due from Watkins to Greer & Baucum is shown by the second deed of trust. This was not void; although it conveyed no interest in the land in question, other property was included upon which the deed could operate, and it contained on its face evidence of indebtedness for other matter to a considerable extent.

If this were so, and the evidence is at least *prima facie,* Watkins, whose possession was that of mortgagor in possession, and not that of a tenant with a lien on his crops, might, after payment of taxes, appropriate his cotton as he pleased; or, failing to do so, his creditor, to whom he paid it, might appropriate it to any valid existing debt.

Again, this finding was premature in a decree forming the basis of a reference. It should have been one of the matters referred. It concerned the appropriation of money, or value, in an account to be taken. The determination of the fact by the Master would have affected only one of the

items. It is the fixed practice, made imperative in England, and the better practice everywhere, not to forestall the Master in such cases, unless there be clear and satisfactory evidence already in, but leave such facts to be determined before him, under apt directions. (*Gresley's Equity Evidence, pp. 240, 503 n, 508 n.*) The reason of the rule does not of course extend to matters admitted, or concerning which the evidence leaves no doubt, but does extend to cases where the evidence is incomplete, and where the admission of further evidence may be desirable for the purpose of complete justice. In this case it is apparent that Greer & Baucum had reserved the proof of other indebtedness as proper to be made before the Master, and offered to make it there, but were not allowed. The order cut them off from an important right, as they were held chargeable with rents on account of cotton received.

The directions of the Chancellor should have been not to charge them with rents of 1873, but with the value of cotton or other produce received and not appropriated by them to some other existing debt. Then the report of the Master, if erroneous, might have been corrected on exceptions and on review of the evidence upon which he acted.

After 1873 they are clearly chargeable. With regard to the values of the rents, repairs, taxes, etc., during subsequent years, the proof taken and returned by the Master is very voluminous. It is full of minute details—much of it irrelevant, and the whole vague, unsatisfactory and conflicting.

The conclusions of the Master seem to have been calmly and impartially reached; and however, in particular details, the preponderance of evidence may seem to be, it is very questionable whether any more satisfactory results could be reached by another reference. It is hard from

the proof to fix determinate figures, and the Master, as the best thing practicable, has, in several instances, fallen upon averages as the only solution.

Upon the whole, his conclusions as to values, as corrected by the Chancellor, are not so repugnant to testimony; and are so well supported by portions of it that we can not disturb them without confusion, delay, expense to parties, and results perhaps no more satisfactory in the end.

It is contended that defendants should have been allowed to prove, before the Master, that the ferry was not a part of the property included in the trust; that it was run by virtue of a franchise granted to Chrisman, and appurtenant to lands above; that it had been purchased by Watkins and moved down to the lands in question, and was the property of Watkins; and that defendants should not be chargeable with the rents. The testimony would have been irrelevant. The defendants obtained possession of it appurtenant to and part of the property on both banks, included in the trust deed. No one in the community seems to have questioned the rightful exercise of the franchise at that place. The rents should be credited on their debt as so much payment.

8. MORT- GAGEE: When liable for interest on rents. Greer's whole rights were exhausted when the secured debt was paid. He had no ground on which to retain any rents or profits beyond that. They belonged to Turner, and Greer should be accountable for interest.

In 1877 Greer had control of the property, during the first two or three months in which the business of the warehouse and ferry was, probably, most profitable. He then left all in the control of other parties. It was too late to rent advantageously. The receiver deemed it most advisable to leave it in possession of the occupants and to

endeavor to collect the rents. As to the land rents, he collected them in full and paid them to Turner; but failed to collect the warehouse and ferry rents, valued at $750.

The Chancellor approved his course, and we can not say he erred in not holding the receiver responsible for the uncollected rents, or in not imposing the loss on Turner. The latter is entitled, as against Greer, who was wrongfully holding at the beginning of the year, and who put the parties in possession, to an account of all the rents at a fair valuation; and Greer was properly held liable for the uncollected balance. Had Turner himself, or by his agent, taken possession, the rule would have been different, but he had no control that year of either the renting or collection. The receiver was an officer of the court in no way subject to his directions. Any attempt on his part to control or influence the receiver, personally, would have been highly reprehensible.

9. Giving possession to insolvent is liable for rents.

Unfortunately, in this already much protracted litigation, there must be another reference, requiring original proof before a Master; and, as that can not properly be taken here, the cause must be remanded. There were errors on both sides, and the reversal is on both appeals.

On taking the account for 1873, the taxes for 1872 and 1873, which, as appears by the Master's report, were paid by Greer & Baucum, must be taken from the value of the thirty-three bales of cotton received by them, before the balance of the proceeds can be applied either to the special trust debt in question, or any other debt. Watkins had the pernancy of the rents and profits during those years, and it was his duty, primarily, to pay those taxes. Greer & Baucum had a lien upon the land for their secured debt, and Turner had the ultimate property in the lands. All stood in such relation to each other as to make it the duty

of each to see the others protected as to the taxes, or at least to refrain from any act which would shift the burden from where it primarily belonged. Greer & Baucum had no right to take the products of the land upon their trust debt, or any other, and then, by paying taxes, throw the burden of them on Turner. Their interest also required that the taxes should be paid, and they should have been paid out of the products.

It is desirable that as much as possible of the litigation should be closed here.

In other respects the account, as stated by the Master, modified by the Chancellor, and corrected here, will be considered as settled, and the items, thus fixed, shall pass into the new account. In fixing the amounts named in the following directions, the court has undertaken to go through the accounts, and to determine upon such sums as they deem equitable, after all corrections and allowances.

### DIRECTIONS FOR DECREE.

Reverse and remand, with directions to the court below to order an account to be taken on proof before the Master, and on that in the case of the value of the thirty-three bales of cotton, or any greater number, to the value of $3,000, received by Greer & Baucum from Watkins, near the close of 1873, less the amount of $294.15 paid by them for the taxes of 1872 and 1873, and to ascertain further, on like proof, whether or not Watkins then owed Greer & Baucum any other debt, and to what amount (and whether he or Greer & Baucum then made any appropriation of the proceeds), and with further direction to the Master, after having ascertained these facts, to restate the accounts, crediting Greer & Baucum with the amount of three thousand five hundred and thirty-six dollars, balance due them on

their secured debt at the time of tender, to bear no interest from that time; and charging them, jointly, as follows:

1. With so much of the proceeds of thirty-three bales of cotton or more, as aforesaid received at or near the close of 1873, less taxes, as aforesaid, for 1872 and 1873, as they may not have rightfully appropriated to some other debt.

2. With net rents of 1874, amounting, after deducting repairs and taxes, to $1,229.31

3. With net rents for 1875, amounting, after deducting repairs, taxes and press, to $1,204.

4. Charging Greer alone with net rents of 1876, amounting, after deducting repairs and taxes, to $1,544.53.

5. With rents of warehouse and ferry for 1877, $750.

After the charges shall have covered the credit, the account shall be carried on as a debit against Greer (including Baucum for so much of any excess over said credit as they may have received before Baucum transferred his interest to Greer), in which he shall be charged with interest at six per cent., without compounding, up to the time of final decree, upon all sums chargeable at the end of each successive year.

Upon the return of the report, and settlement of the same on any exceptions, the court below will render a personal decree against Greer, or Greer & Baucum, as the case may be, in favor of Turner, for any sum found due; and will also vest in Turner all right, title and interest in the lands in question, against all the parties to the suit; and will, if necessary, proceed by appropriate writs to put him in possession.

The court will settle and close the accounts of the receiver, allowing him all just compensation, to be considered as costs, and will direct him to pay over to Greer any balance in his hands which he may have collected as rents

for the warehouse and ferry for 1877; all other funds in his hands to be paid to Turner.

The costs of this appeal will be divided equally between the parties. The Chancellor will adjust and decree the costs incurred in the court below, as may seem to him equitable, and will make all orders consistent with this opinion and the directions here given, which may be necessary to a final disposition of the cause.