HUDSON BROTHERS COMMISSION COMPANY v. GLENCOE SAND AND GRAVEL COMPANY et al., Appellants.

In Banc, June 15, 1897.

1. Deed of Trust: TENDER OF DEBT. A tender, after maturity, of the amount of the debt, secured by a deed of trust on land, does not extinguish the debt or lien, nor operate to defeat a sale and a trustee's deed thereunder.

2. Constructive Notice. Where a deed of trust and a lease are made at the same time by the same parties, and grow out of the same transaction, and are recorded only one minute apart, there is no question of notice as affecting priorities.

**3. Deed of Trust:** LEASE: EQUITY OF REDEMPTION: MERGER: FORE-
CLOSURE. Where there is one consideration for the simultaneous
purchase of a lease, mortgage notes and the equity of redemption,
which was made in order that defendants might secure the entire
title to a tract of land, the lease becomes merged in the greater title.
A foreclosure, therefore, of the deed of trust by the holder of the
mortgage notes for failure to pay the consideration, gives the pur-
chaser at the trustee's sale the right to possession, and defendant
can not defend on the ground that he bought and holds under the
unexpired lease in which plaintiff was the original lessee.

*Appeal from St. Louis City Circuit Court.*—HON. L. B.
VALLIANT, Judge.

AFFIRMED.

*R. M. Nichols* for appellant.

(1)   Appellant paid $3,750 to respondent for its
lease and to Martha A. Beard for her equity and as a
part payment to respondent on its mortgage notes.
Where there has been a partial payment of the pur-
chase money, or the vendee has placed valuable
improvements, the action of ejection does not lie. The
vendor has other remedies. *Courtney v. Woodworth*,
9 Kan. 443; *Holcomb v. Dowell*, 15 Kan. 379; *Staley v.
Murphy*, 47 Ill. 263; *Cythe v. La Fountain*, 51 Barb.
186; *Baker v. Railroad*, 57 Mo. 268; *Hubbard v. Rail-
road*, 63 Mo. 68; *Webster v. Railroad*, 116 Mo. 114;
*Scarritt v. Railroad*, 127 Mo. 303.   (2) Upon the pay-
ment of the $3,750 appellant was put in possession of
the leased premises.   The contract was an entirety and
a rescission must have been of the entire contract, *i. e.*,
by respondent and by the Beards; no partial rescission
would avail. *Johnson v. Bedwell*, 43 N. E. Rep. 246.
(3) Respondent, as the vendor of the lease, could not
maintain its action in ejectment until it had tendered
or returned the $3,750 received by it on the contract of
sale. Newell on Eject., sec. 4; *Staley v. Murphy*, 47

Ill. 263; *Johnson v. Jackson*, 27 Miss. 498; *Hairston v. Jaudon*, 42 Miss. 380; *Frink v. Thomas*, 20 Ore. 271; *Fay v. Oliver*, 20 Vt. 118; *Drew v. Peddlar*, 87 Cal. 443. (4) Where the tender is pleaded as only having the effect of extinguishing the lien of the mortgage, and not of destroying the debt, it is not necessary to keep the tender good and pay the money into court, and such tender will have that effect, although made after the law day. *Kortright v. Cady*, 21 N. Y. 343; *Olmstead v. Tarsney*, 69 Mo. 396; *Thornton v. Bank*, 71 Mo. 221; *Ins. Co. v. Norris*, 74 Hun. 527; *Cass v. Higebotham*, 100 N. Y. 251; *Von Housen v. Kanouse*, 13 Mich. 308; *Eslow v. Mitchel*, 26 Mich. 500; *Mitchel v. Roberts*, 74 Fed. Rep. 776; *Loghborough v. McMevin*, 74 Cal. 250; Boone on Mortgages, sec. 145. (5) A lawful tender by the purchaser of equity of redemption will destroy the lien of the mortgage. *Thornton v. Bank*, 71 Mo. 221; *Frost v. Bank*, 70 N. Y. 553; *Yeager v. Groves*, 78 Ky. 276; *Brown v. Simmons*, 45 N. H. 211; *Kortright v. Cady*, 21 N. Y. 343. (6) As held in the above cases, so in Missouri it is held "that a mortgage or deed of trust in the nature of a mortgage is regarded as a mere security for a debt in such sense; that upon the satisfaction of the debt the title or interest conveyed by the mortgage or deed of trust reverts to the mortgagor or grantor or his assigns by mere operation of law." *McNair v. Picotte*, 33 Mo. 57; *Pease v. Iron Co.*, 49 Mo. 124. (7) If a tender and refusal of the full amount of the debt extinguished the lien of the mortgage, then the power of sale contained in the deed of trust became inoperative and the trustee's deed absolutely void, both at law and in equity. *Cupples v. Galligan*, 6 Mo. App. 62; *Koehring v. Muemminghoff*, 61 Mo. 403; *Long v. Long*, 79 Mo. 644; *Siemers v. Schrader*, 88 Mo. 20; *Scheidt v. Crecelius*, 94 Mo. 322; *Hill v. Carter*, 59 N. W. Rep. 413.

*John W. Noble, George H. Shields,* and *John R. Warfield* for respondents.

(1) The "lease" so-called is a mere mining license. It conveys no estate or property in the land itself, but only a license to search and get the materials named. *Boone v. Stover,* 66 Mo. 430; *Springfield v. Cole,* 130 Mo. 1. (2) The license to mine could be transferred only by deed. *Desloge v. Pearce,* 38 Mo. 588; R. S. 1879, sec. 2510; R. S. 1889, sec. 5183. (3) The possession given under the contract of purchase, without transfer of the term of the license, was a license at will, and upon failure by vendee to perform, ejectment would lie without notice or demand. *Desloge v. Pearce, supra.* (4) And if the effect of the averment can be held to state a transfer of the license, it also averred that the licenses acquired the equity of redemption, and thus the license was merged. The defendant licensee became its own licensor or landlord. Wood on Land. and Ten., sec. 505. (5) It is not averred that the contract of purchase thus alleged was performed; but it is only averred that the purchase price was to be $10,000, and $3,750 only was paid for the whole purchase, and that the balance was to be paid at the expiration of one year. (6) It is not averred that any notes were given on this contract nor that any improvements were made on the premises by either of them; and the authorities cited by appellant as to rescission are all based on such circumstances. (7) And even if the contract of purchase had been for the fee simple itself, without averment of performance by the vendee, possession obtained under it can not prevail in an action of ejectment. *De Bernardi v. McElroy,* 110 Mo. 650; *Gibbs v. Sullens,* 48 Mo. 237; *Fulkerson v. Brownlee,* 69 Mo. 371; *Rose v. Perkins,* 98 Mo. 253;

*Glascock v. Robards*, 14 Mo. 350; *Collins v. Stocking*, 98 Mo. 290–293; *Avery v. Railroad*, 113 Mo. 561. (8) While the defendant seeks to obtain release of the lien of the deed of trust by a mere tender, it does not aver that the sum tendered was the amount due on the notes. The tender must be shown to have been for the whole amount due, even on defendant's own theory. *Tuthill v. Morris*, 61 N. Y. 94; *Benson v. Hore*, 45 Minn. 40. (9) In this case the defendant did not owe the debt of which the notes were evidence alone, but it did owe the contract price for the mortgage, the lease, and the equity. Yet it does not make tender on its own debt, but expressly avers it solely tendered a certain sum of money in payment of the mortgage notes. The two liabilities were not the same. *Woolner v. Levy*, 48 Mo. App. 469; *McGuire v. Brockman*, 58 Mo. App. 307. (10) Tender of the amount due on a mortgage debt does not release the lien of the mortgage, unless kept good and brought into court, and even then it merely stops interest on the debt. *Landis v. Saxton*, 89 Mo. 375, which construes section 1008, Revised Statutes, now sections 2937, 2938, Revised Statutes 1889. (11) Tender after maturity of the debt does not remove the lien of the deed of trust or mortgage by which it is secured. *Crain v. McGoon*, 86 Ill. 431; *Stockton v. Dundee*, 22 N. J. Eq. 56; *McMahon v. Schoonmaker*, 51 N. J. Eq. 95; *Perre v. Castro*, 14 Cal. 519; *Himmelmann v. Fitzpatrick*, 50 Cal. 650; *Merritt v. Lambert*, 7 Paige, 344; *Maywood v. Hunt*, 5 Pick. 240; *Currier v. Gale*, 9 Allen, 522; *Post v. Arnot*, 2 Denio, 344; *Tuthill v. Morris*, 61 N. Y. 94; *Cowles v. Marble*, 37 Mich. 158; *Bailey v. Metcalf*, 6 N. H. 156; *Mathews v. Lindsay*, 20 Fla. 973; *Parker v. Beasley*, 116 N. C. 1. (12) Ejectment can not be maintained in New York against the grantor of deed of trust or a mortgagor. This is the statute law of that State. *Sut-*

*ton v. Mason*, 38 Mo. 120; *Johnson v. Houston*, 47 Mo. 230; *Bailey v. Winn*, 101 Mo. 649. (13) And it is the established doctrine of this honorable court, that the power of sale in a deed of trust is not a mere naked authority, but a power coupled with an interest and where the trustee conveys the property even though in breach of trust, the title becomes absolute in his vendee in a court of law, and the same can be questioned only in equity. *Schanewerk v. Hoberecht*, 117 Mo. 22; *Lanier v. McIntosh*, 117 Mo. 508; *Kennedy v. Siemers*, 120 Mo. 73; *Springfield, etc., Co. v. Donovan*, 120 Mo. 423; *Snyder v. The Chicago, etc., Co.*, 131 Mo. 568; *Biffle v. Pullam*, 125 Mo. 108. These cases overruled expressly, *Powers v. Kueckhoff*, 41 Mo. 425; *Long v. Long*, 79 Mo. 644; *Seimers v. Schrader*, 88 Mo. 20, and on principle *Koehring v. Muemminghoff*, 61 Mo. 403, which rests largely on *Powers v. Kueckhoff, supra*.

MACFARLANE, J.—This is an ejectment suit, instituted in the circuit court of St. Louis county, on the fourteenth day of November, 1893, by Hudson Brothers' Commission Company, a corporation, Benjamin F. and Wm. A. Hudson and A. D. Scott, against Glencoe Sand & Gravel Company, a corporation, John E., Martha A. and Louis Beard, and afterward by change of venue taken to the circuit court of the city of St. Louis.

The petition, in the usual form, is to recover a tract of land in St. Louis county. The answer of defendants, the Beards, was a general denial, and an allegation that they were tenants of defendant corporation. The answer of said corporation was a general denial and two special defenses. The first of these charges in brief, that Mrs. Beard, ·by a trustee, was the original owner of the land, and in 1885 made to plaintiffs a lease for a term of twenty-five years, begin-

ning April 10, 1885, and ending April 10, 1910, of the right of entering upon said land and mining and carrying away gravel, sand, ballast and fire clay, and also to carry on all necessary quarrying and mining operations thereon. The consideration for the lease was one fourth of the net profits of what was mined and taken from the land. The lease was duly recorded April 17, 1885, at 10:28 in the forenoon. That subsequently, on the said tenth day of April, 1885, the said defendant Beard and her trustee conveyed said property to one Henry L. Wilson in trust to secure to plaintiffs certain promissory notes of said date, maturing in one, two, three, four and five years, and bearing ten per cent interest, aggregating the sum of $11,280, which deed of trust was recorded on the seventeenth of April, 1885, at 10:29 o'clock in the forenoon. That said defendants, Beard, afterward paid large sums on said notes, aggregating $2,000, and were entitled to credits thereon for royalty and rentals which had not been accounted for or credited. That on August 11, 1890, defendant entered into a contract with plaintiff for the purchase of said lease, together with the mortgage notes of Mrs. Beard, and the equity of redemption in the land, for all of which defendant agreed to pay plaintiff the sum of $10,000 of which sum $3,750 was paid in cash and was to be credited upon said notes, and the balance was to be paid in one year thereafter. That in pursuance of said contract plaintiff assigned to defendant said lease and put it in possession of the land thereunder and procured from said Beard and her trustee a deed conveying to it her equity of redemption in the land. By this defense it is alleged that defendant is in possession of the land under said lease and the ownership thereof and has always paid the rents under its provisions, and is entitled to the possession of the land thereunder.

The second special defense charges that on the fourteenth day of June, 1892, defendant tendered to plaintiff the sum of $10,453 in payment of the notes secured by said deed of trust which plaintiff refused to accept, and refused to credit said notes by the cash payment of $3,750. That thereafter plaintiff pretending that there was a default in the payment of said deed of trust procured the said trustee to sell the land, under the powers contained in the deed of trust, purchased the same at the sale and received from the trustee a deed of conveyance therefor. Under this defense, defendant alleges that the tender had the effect of extinguishing and discharging the lien of the deed of trust and of making null and void the power of sale therein conferred, and the sale and deed thereunder was therefore void and of no effect.

The reply denies the new matter. Denies specially a sale or assignment of the lease. Admits the execution of the lease and deed of trust, but alleges that they were contemporaneous acts and intended as parts of the same transaction. Denies the tender but admits the sale of the land under the deed of trust and the conveyance thereof by the trustee to plaintiffs.

The cause came to trial to a jury January 23, 1895. It was agreed that Mrs. Beard was the common source of title. Plaintiff read in evidence the deed of trust from Mrs. Beard, the trustee's deed to plaintiff, a certified copy of the lease mentioned and evidence of rental value and rested.

Defendant corporation offered to introduce evidence in support of its special defenses. Plaintiff objected to any evidence in support of these pleas on the ground that they constituted no defense to the action. The court held "that the facts thus pleaded in the answer were in the nature of an equitable defense, which, if sustained, should be so on terms that a court

of equity would deem just, and that if the defendants' counsel desired, the court would consider the question of whether or not there was a cause for equitable relief or defense made out by the answer; and if so, would hear the evidence *pro* and *con*, and pass judgment upon it." Counsel for plaintiff assented to that course, but the counsel for defendant declined to have his answer treated otherwise than as a plea at law to be passed on by the jury; whereupon the court instructed for the plaintiff, and the verdict and judgment were rendered accordingly. Defendant appealed.

I. By their special pleas defendants undertake to set up facts which they insist give them the legal right to continue in the possession of the land. On the trial they disclaimed any equitable right to relief under them, and as defenses at law claimed the right to prove the facts therein alleged. The court refused to admit evidence for the purpose for which it was offered, and these rulings are the only errors assigned. The questions for consideration, therefore, on this appeal are whether, under the facts stated in these defenses, assuming them to be true, defendants are entitled to remain in the possession of the premises in question.

II. The second defense will be considered first. By that plea defendants say that prior to the sale under the deed of trust they tendered to plaintiff the amount due on the notes secured thereby, and that the tender thus made extinguished the mortgage and power of sale thereunder, and the subsequent sale by the trustee and his deed to plaintiff are therefore absolutely void.

The alleged tender was made by defendants long after the maturity of the notes, and the question raised by the second defense is whether the tender, if suffi-

cient in amount, discharged the lien of the deed of trust.

The question is one upon which there is much conflict in the adjudications of the courts of this country. It is agreed, generally, that if a tender of the amount due on the secured debt is made on the day of its maturity, the mortgage or deed of trust given as security for it will be released and the lien thereof discharged. It has been expressly so decided by this court in the case of *Thornton v. Bank*, 71 Mo. 221. Yet the reasoning employed in the subsequent case of *Landis v. Saxton*, 89 Mo. 392, would appear to lead to a different result. But that is a question we are not called upon to decide in this case, for the tender was not made until after the maturity of the notes.

The question here in issue was recently considered by division two of this court in the case of *McClung v. Missouri Trust Company*, 38 S. W. Rep. 581. BURGESS, J., who wrote the opinion in that case, after a review of the authorities, reaches the conclusion that "the generally accepted doctrine is that the tender of the amount of the indebtedness secured by the mortgage, made after default, will not discharge the mortgage, but will stop the running of interest from that time." To the numerous cases cited supporting that doctrine may be added the following: *Crain v. McGoon*, 86 Ill. 431; *Matthews v. Lindsay*, 20 Fla. 973; *Parker v. Beasley*, 116 N. Car. 1; *Rowell v. Mitchell*, 68 Maine, 21. The case, however, was finally decided upon the ground that no tender had, in fact, been made and what was said, therefore, can not fairly be regarded as a decision of the question here involved.

The question in issue in *Olmstead v. Tarsney*, 69 Mo. 399, was the effect of a tender of the amount due on a special tax bill, in respect to discharging the lien. The court treated the lien of a tax bill "as conferring

upon the owner thereof the same right which would
have been conferred by a mortgage for that amount,
and as being similarly subject to redemption.'' The
two rules were stated and authorities sustaining each
cited, but, without reaching a conclusion, the case was
decided upon another question.

In the case of *Thornton v. Bank*, 71 Mo. 232, the
court expressly states that ''A. B. Thornton, one of
the debtors, at their maturity, tendered to the National
Exchange Bank one half of the notes that bank held
against him and Bragg, and the bank refused to accept
it, insisting upon payment of the whole amount.''
The court held that this tender extinguished the bank's
lien on her property, she being only liable for that
amount. The decision therefore was that a tender on
the maturity of the notes extinguished the lien of the
deed of trust.

The case of *Landis v. Saxton, supra*, was a suit to
enjoin the sale of land under a deed of trust. There
was a dispute in respect to the allowance of a certain
credit on the note. A tender, previous to commencing
the suit, was made by the payee of the note of the
amount he thought to be due, but the tender was not
kept good by a deposit in court. On a trial it was
found that the payee was entitled to the credit claimed
and that the full balance due on the note was tendered,
still the court held: ''While a tender was made by the
plaintiff to the defendant, we do not understand that
any deposit of the money tendered was ever made in
court, and the only effect of the tender, if sufficient
in amount, was to stop the running of interest. The
tender can not have the effect to deprive the defendant
of his security created by the deed of trust for so much
as may be found due at the time the tender was
made.'' This decision was predicated upon the statute
which provides that, ''where a tender and no deposit

shall be made, as provided in the next preceding section, the tender shall only have the effect, in law, to prevent the running of interest or accumulation of damages from and after the time the tender was made." R. S. 1879, sec. 1008; R. S. 1889, sec. 2938. The preceding section referred to relates to cases in which a tender is made before suit is brought. It is evident that the court, or at any rate, the judge who wrote the opinion, held that the statute applied to mortgage debts as well as others, and that a tender only had the effect therein declared. The subsequent remarks of the judges indicate that without regard to the statute, and though a tender made after default may extinguish the lien, a court of equity will not relieve the mortgagor except in terms of full payment of the debt. The courts of appeals of this State, following the *Landis* case, *supra*, hold that a tender after default of the amount due on a debt secured by chattel mortgage, does not extinguish the lien. *McGuire v. Brockman*, 58 Mo. App. 310; *Woolner v. Levy*, 48 Mo. App. 474; *Berman v. Hoke*, 61 Mo. App. 380.

We are of the opinion, therefore, that the question is not settled in this State, and may be considered as an original proposition, on reason and authority.

As has been seen, the greater number of courts of the States hold that a tender after default does not discharge the lien of a mortgage unless it be kept good. In addition to the authorities before cited some courts have held that the tender of the amount due on a mortgage debt has no greater effect than a common law tender of the amount due on an unsecured debt. If kept good it only stops the running of interest. In Arkansas it is held that the tender of the mortgage debt stops interest on the debt, and as long as it is kept good, destroys the power to sell the mortgaged premises for payment of the debt. *Greer v. Turner*, 36

Ark. 17. A statute of Alabama allows the mortgagor to redeem after a sale under the mortgage by paying or tendering, within a specified time, to the purchaser or his vendee, the purchase money with interest and all lawful charges, and provides that "such payment or tender has the effect to reinvest him with the title." It was held by the Supreme Court of that State that the tender, in order to be effective, must be kept good. *Alexander v. Caldwell*, 61 Ala. 550. See, also, to the same effect, *Brown v. Simons*, 45 N. H. 211.

The common law doctrine was that the estate of the mortgagor vested absolutely in the mortgagee, upon default in payment of the debt, at the time and place stipulated. 2 Coke upon Litt. 205a. A breach of the condition worked an absolute forfeiture of the estate. On the other hand, if the mortgagor tendered the full amount due, at the time and place stipulated; and the mortgagee refuse to accept payment, the mortgage was discharged for the reason that there had been no breach of the condition. Coke upon Litt. 207a.

In order to prevent a forfeiture of the estate, courts of equity raised an equitable estate in the mortgagor, called the equity of redemption. While the legal estate, on breach of the condition, vested in the mortgagee, it was held in trust for the mortgagor, who had the right to redeem the estate or have it reinvested in him, by payment of the debt at any time before foreclosure. The right is purely equitable. A legal breach of the condition has already occurred, the legal title has vested in the mortgagee, and relief is afforded to the mortgagor alone on equitable principles. In dealing with the rights of mortgagors, after condition broken, this court has at all times been governed by equitable principles, and has refused to enforce forfeitures. *Philips v. Bailey*, 82 Mo. 639;

*Whelan v. Reilly*, 61 Mo. 567; *Wolz v. Parker*, 134 Mo. 465.

When the mortgagor is protected in rights on equitable considerations, why should not like considerations protect also the mortgagee? Why should a forfeiture be prevented in the one case, and enforced in the other? A loss of the security would in many, indeed, in most cases, be a loss of the debt. It may be said also that a mortgagee will rarely, if ever, refuse payment of the amount he thinks due, and a refusal to accept a tender generally occurs only when there is a dispute as to the true amount. It would be most inequitable to require the acceptance of whatever is offered, or take the chance of forfeiting the whole. Nor could the mortgagor fairly complain that his tender did not effect a discharge of the mortgage, for he would still owe the debt and could stop the running of interest by keeping the tender good.

Take the case at bar as an illustration. Mrs. Beard is the debtor and mortgagor. Plaintiff is mortgagee and holder of the notes. Defendants hold the equity of redemption, and tender the amount due on the notes which plaintiffs, not believing it sufficient, refuse to accept. The lien is discharged and defendants have the absolute title to the land without paying for it; Mrs. Beard is deprived of the protection the deed of trust afforded her as maker of the notes, and plaintiff must look to Mrs. Beard for payment of the notes, or to defendant for breach of the agreement to purchase them. When a court of law undertakes to deal with the equity of redemption it should, at the same time, regard the equities of the mortgagee and only declare a mortgage satisfied when the debt is paid.

It is held in the States of New York and Michigan (both of which hold that a tender after maturity discharges the mortgage), that a mortgagor coming into

a court of equity for affirmative relief must himself do equity, and pay the debt and interest at least up to the time of the tender. All that he can be equitably entitled to is relief from the interest and costs subsequent to the tender. *Tuthill v. Morris*, 81 N. Y. 94; *Cowles v. Marble*, 37 Mich. 158. In these cases the equities of the mortgagee is recognized in a court of equity, and they should in like manner be recognized by a rule of law that a mere tender does not discharge the mortgage.

The correct principle is so well expressed by the Supreme Courts of Illinois and New Jersey that we quote what is said by them in one case each. "We fail to appreciate," says SCHOLFIELD, C. J., of the former State, "why a court of equity, while interposing its authority to mitigate the rigor of the common law rule against the mortgagor, should, at the same time, extend and make more rigorous the rule against the mortgagee. We do not perceive how this can be said to be in pursuance of the natural principles of justice. If a tender is made but not accepted, and is kept good, it is plainly right that the mortgagee should have only the tender. The mortgagor has been deprived of the use of his money, and the mortgagee has had ample time to reflect upon his rights, and has been at liberty to have them, whenever he would, by the acceptance of the tender. But when the tender is not kept good, the mortgagor has the use of the money, and the mortgagee, however ill-advised he may have been at the time of the tender, has no opportunity for revising and reconsidering his judgment, and thereafter accepting the money tendered." *Crain v. McGoon*, 86 Ill. 431.

DEPUE, J., of the New Jersey Supreme Court, says:
"When a court of law undertakes to deal with this equitable estate, it must do so upon principles of equity,

and keep in view the relief which would be afforded in equity, and protect the rights of the parties accordingly. The recognition of this equitable estate has been obtained in courts of law by the fiction of regarding the mortgagee, after his debt is satisfied, as a trustee of the legal estate for the mortgagor. Until the debt is paid, the legal seizin of the mortgagee is not a mere formal title, and no trust will be raised for the benefit of the mortgagor until the purpose for which the mortgage was made is answered." *Shields v. Lozear*, 34 N. J. L. 507.

If after condition broken, the mortgagor continues to hold the mortgage as security for his debt a tender should have no greater effect upon the security than upon the debt itself. In such case a tender does not discharge the debt at common law or under the statute heretofore quoted. The security is a mere accessory of the debt, and is only discharged when the debt is paid, except in cases in which principles of equity require a discharge.

Our opinion is that a tender of the amount due on a mortgage debt, made after default, should not on principle discharge the mortgage, and should have no greater effect on the security than it has on the debt itself, and that the result will be the same whether the mortgagee holds the legal title in trust, or as a mere security. Defendants make no offer to redeem, but stand upon the strict legal rights they suppose their tender gives them. They state no legal defense to the action under this plea, and the court ruled correctly on it.

III. The facts charged in the first defense are that defendants, in August, 1890, purchased from plaintiff the lease, the deed of trust on the land, and the equity of redemption, for which they agreed to pay the amount then due on the mortgage notes, not to

exceed $10,000. Of this sum $3,750 was paid in cash and the balance they agreed to pay in one year thereafter. That plaintiffs thereupon assigned to defendants said lease and secured from Mrs. Beard a deed conveying said land to defendants, subject to said deed of trust, and defendants were put in possession of said land under said lease. There is no allegation that any specific part of the purchase price was the consideration for the lease, or that the agreed price had been paid. Nor was any facts stated, such as making valuable improvements on the land, which would make it inequitable to take from them the possession.

The equity of redemption having been foreclosed, the defendants have no standing, unless they can maintain their right to the possession as assignee of the lease. This we think they can not do.

The deed of trust and lease were executed by Mrs. Beard and were delivered to plaintiffs on the same day, and were filed for record by plaintiffs substantially at the same time. The certificate of the recorder shows that the lease was filed only one minute before the deed of trust, a difference which can be accounted for in the time taken to indorse the filing. But plaintiff was beneficiary in each, and there could have been no question of notice as affecting priorities, and the date of recording is a matter of no importance. The execution of the two instruments were evidently cotemporaneous acts and constitute but one transaction.

It is also manifest that the purchase from plaintiffs by defendants of the equity of redemption, the lease and the mortgage notes, under which the latter sought to secure the entire title to the land, were intended to be, and were in fact, a single transaction. The consideration $10,000, which defendant agreed to pay, was for all three rights purchased. It is evident that it was intended that the equity of redemption, the

mortgage, and the lease should go together, as it was intended the lease and the mortgage should when first executed. No equities are shown and none can be seen, which should prevent a merger of the lease into the greater title held by defendants, and to carry out the manifest intention of the parties we must hold that a merger took place. Great injustice would be done to plaintiff to hold otherwise. The agreement of plaintiff in effect was to vest the absolute title in defendants upon the payment of $10,000. Payment was not made and the equity of redemption was foreclosed and plaintiff thereby became the owner in fee of the premises. It can not be thought for a moment that the parties intended that the lease should be kept separate and distinct from the title and that defendants, without paying the agreed consideration, should enjoy the possession of the land until the termination of the lease in the year 1910.

In order to carry out the intention of the parties and to prevent gross injustice we must hold that when defendants purchased the equity of redemption, lease, and mortgage and was put into possession thereunder, the lease became merged in the greater estates, and the sale under the deed of trust passed the legal title to plaintiffs free of the lease or any rights under it.

The judgment is affirmed. BARCLAY, C. J., and GANTT, SHERWOOD, BRACE, BURGESS and ROBINSON, JJ., concur.