Jerry L. RAINEY and Janet R. Rainey, Plaintiffs-Respondents,

v.

B. Arthur FOLAND and Deva L. Foland, Defendants-Appellants.

No. KCD28595.

Missouri Court of Appeals, Kansas City District.

Aug. 8, 1977.

Bob F. Griffin, Cameron, Griffin, Luckenbill & Griffin, for defendants-appellants.

Richard G. Poland, Cameron, for plaintiffs-respondents.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

DIXON, Judge.

Defendants appeal from a judgment in a court-tried case granting plaintiffs reformation of a warranty deed. The plaintiffs' petition sought reformation on the ground of mutual mistake. The dispositive issue is whether there is substantial evidence of mutual mistake. The judgment is reversed.

On April 27, 1974, Doctor Jerry Rainey and his wife, plaintiffs, entered into a real estate contract to purchase land in Cameron, Missouri, from Mr. and Mrs. Arthur Foland, the defendants. Dr. Rainey had previously contacted Jack Clark, a local realtor, about purchasing property for a veterinary clinic. In response to this inquiry, the realtor asked the Folands if they would sell the south end of some property which they owned but which was not listed for sale. Mr. Foland initially told the realtor he would sell the property for $20,000 but in subsequent discussions finally agreed to sell for $10,000 one-half the width of the originally discussed plot.

> Beginning at the southeast corner of sellers' property on the southeast corner of State Route BB and Orange Street; thence west, one-half the distance of sellers' property along Route BB, thence north three hundred fifty feet; thence east to Orange Street, thence south along Orange Street to point of beginning.

The above described property is part of Lot 14 in the Sunnyside addition in Cameron, Missouri. Lot 14 is bounded on the north by Ford Street, on the east by Orange Avenue, and on the south by State Highway BB.

The Raineys and the Folands never had direct contact regarding the sale, dealing only through the realtor. Mr. Foland testified that the realtor inquired about the sale of the south portion of Lot 14 extending 350

feet in length. Foland's understanding was that the northern boundary of the tract to be sold would be approximately 90 feet south of an east-west fence on his property. When asked by Mr. Foland where the north-south measurement would start, the realtor replied wherever the abstract calls for. Mr. Foland thought this would be State Highway BB, shown on the plat of Sunnyside Addition to be 442 feet south of the east-west fence. It is this 90 foot area on the north which is the center of dispute between the parties.

In May 1974, after the parties had signed the contract the preceding April, the realtor asked licensed surveyor David Mallen to survey the property. This was at the request of Dr. Rainey. The original survey shows that the north-south dimension along the western boundary is three hundred fifty feet measured from the north right-of-way of State Route BB. The surveyor testified that it is eighty feet from the center of State Route BB to the northern edge of the right-of-way line running along State Route BB. He testified that in his opinion the provision of the contract calling for a beginning at the southeast corner of sellers' property was controlling, and the reference to the southeast corner of State Highway BB and Orange Street was just a general description of the location of the property. The southeast corner of sellers' property was not the southeast corner of State Highway BB and Orange Street because that was part of the State Highway right-of-way. When he first received the description for the survey from the realtor, the surveyor notified the realtor that there was a problem as to where the southeast corner was to be located because of the State Highway right-of-way.

The surveyor placed stakes on the property in accordance with the original survey. The northern stakes were placed in line with the fence running east to west across the property. The survey is dated July 7, 1974. The deed was dated on July 26, 1974. Foland and the realtor came to see the surveyor after the stakes were placed and told him that those stakes indicating the northern boundary of the property which the Raineys were to purchase were too far north. The surveyor testified that either he, Foland or the realtor moved the stakes about 90 feet south of where he had placed them. The realtor had told him that the north boundary was supposed to be approximately 90 feet farther south based on a southern boundary different than the north right-of-way line of State Highway BB. Mallen stated that he told the realtor that things shouldn't have gotten into such a mess and that he thought the realtor was telling Rainey one thing and Foland another.

Closing occurred at the realtor's office on July 26, 1974, at which time the Folands signed and delivered the deed to the realtor who then gave them Dr. Rainey's check for the purchase price. The deed had been prepared by Dr. Rainey's attorney. Dr. Rainey testified that it was not until after closing that he saw that the stakes had been moved. Prior to closing, the Folands had refused to sign two warranty deeds presented by the realtor because those deeds described the 350 foot north-south dimension of the property from a point 87.5 feet north of State Highway BB which is the northern edge of the north right-of-way line. The deed which the Folands finally signed and delivered measured the 350 foot north-south dimension from the south line of the quarter section, not from the right-of-way line 88.3 feet to the north. The description also provided that the tract was subject to the rights-of-way of Orange Street on the east and State Highway BB on the south, as well as easements of record. The surveyor testified that the deed provided for a northern boundary 88.3 feet south of that provided by his original survey.

In August, 1974, the plaintiffs' attorney asked the surveyor to resurvey the property. The second survey was based on a description provided by the plaintiffs' attorney. The second survey was completed on March 1, 1975. The second survey coincides with the original survey. The three hundred fifty foot north-south dimension of the property along the western border of the

property began at a point on the north right-of-way line along State Route BB. After defendants refused to reform the deed to conform to that survey, the plaintiffs brought this action. The trial court expressly found that the execution of the deed as delivered by defendants was fraudulent.

Defendants argue and plaintiffs concede that the trial court erred in granting relief on the basis of fraud because fraud was neither pleaded nor proved.

Defendants assert there was no substantial evidence of mutual mistake, the only pleaded theory, and that the judgment should be reversed. Plaintiffs meet that argument by asserting the evidence is sufficient to support a finding of mutual mistake. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The inquiry must first be the nature of a mutual mistake which justifies reformation.

Reformation is a form of equitable relief which allows parties to a contract to conform an instrument to what the parties intended. *Feeler v. Gholson*, 71 S.W.2d 727, 728 (Mo.1934). By its very nature, this form of equitable relief assumes a prior valid contract—a meeting of the minds. *Frederich v. Union Electric Light & Power Co.*, 336 Mo. 1038, 82 S.W.2d 79, 86 (1935). Likewise, reformation is not a proper remedy where the instrument sought to be reformed does accurately reflect the agreement of the parties. *Feeler, supra.*

The principal ground for reformation is a mutual mistake; both parties have done what neither intended to do. *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261 (Mo. banc 1973); *Zahner v. Klump*, 292 S.W.2d 585 (Mo.1956); *Allen v. Smith*, 375 S.W.2d 374, 379 (Mo. App.1964). Mutual mistake must be shown by clear and convincing evidence. *Niemeyer v. Stephens*, 515 S.W.2d 65 (Mo.App. 1974). Reformation is also available where the fraud of one party has *caused* the mistake of another party, thereby inducing the one to receive less than he bargained for. *Hoxsey Hotel Co. v. Farm & Home Savings & Loan Ass'n*, 349 Mo. 880, 163 S.W.2d 766, 771 (1942); *Citizens Bank of Festus v. Frazier*, 352 Mo. 367, 177 S.W.2d 477, 482 (1944); *Strothcamp v. Sandy Ford Ranch, Inc.*, 440 S.W.2d 193, 195 (Mo.App.1969). However, when there is only evidence of a unilateral mistake or a mutual mistake going to the very subject matter of the contract, there has been no meeting of the minds and therefore rescission or cancellation, rather than reformation, is the proper remedy. *Frederich, supra*, 82 S.W.2d at 86; *Miller v. Haberman*, 359 Mo. 1012, 224 S.W.2d 1002, 1006 (1949).

Considering the evidence in light of these principles, there is no substantial evidence to support a finding of mutual mistake. As noted above, plaintiffs conceded that actionable fraud was neither pleaded nor proved. Thus, plaintiffs must rely upon mutual mistake as their sole ground for relief. The clear preponderance of the evidence is that at the time of the signing and transfer of the deed, the mistake, if any, was only unilateral, defendants having twice refused to sign a deed containing a description which would conform to that now requested by plaintiffs.

It appears from the evidence that at the signing of the contract, both parties were mistaken as to the southern boundary of the tract to be sold. The contract description included property owned by the State Highway Department as a right-of-way. This constitutes a mistake as to the subject matter of the contract which might have afforded plaintiffs relief of rescission. In fact, this mistake did become known to plaintiffs through their agent, the realtor, when he was told by the surveyor that there was a problem as to the southerly boundary because of the existence of the highway right-of-way. The realtor had previously been told by defendants that they would not sell a northerly portion of their property approximately 90 feet in length which was included in the surveyor's original survey. In accordance with this decision, they complained about the location of the surveyor's stakes, and they rejected two warranty deeds offered by the realtor

containing this disputed portion in the description of property to be sold.

The knowledge of the realtor as to a boundary problem is imputed to his principals, plaintiffs. *Luker v. Moffett*, 327 Mo. 929, 38 S.W.2d 1037 (1931). The evidence is uncontroverted that in light of his knowledge, the realtor proceeded to closing and accepted a deed describing a tract which he knew might not be what the Raineys intended to buy but which the Folands clearly intended to sell. Plaintiffs seek only the remedy of reformation of the deed, and it is clear that there was no mutual mistake as to that instrument. In proceeding with the transaction in the face of a boundary dispute (admittedly plaintiffs themselves may not actually have known of the problem until after closing, but it is undisputed that the realtor, their agent, did), plaintiffs forfeited any claim to equitable relief against defendants. Equity will not aid those who make contracts or other dispositions as to boundary lines knowing that they might be mistaken, especially where the true location thereof is available by survey. *Croy v. Zalma Reorganized School District R–V of Bollinger County*, 434 S.W.2d 517, 521 (Mo.1968). Plaintiffs' remedy, if any, is against their agent.

The cause is reversed with directions to enter a judgment for defendants.

All concur.