Craig D. CASADY and Linda C. Casady, Respondents,

v.

David J. FEHRING and Julia Fehring, Appellants.

No. SD 31252.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 25, 2012.

Motion for Rehearing and Transfer Denied Feb. 14, 2012.

Application for Transfer Denied April 3, 2012.

Ron Mitchell, Joplin, MO, for Appellant.

Judson B. Poppen and Alison K. George, Springfield, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Presiding Judge.

David J. Fehring and Julia Fehring (collectively the "Fehrings") appeal the trial court's judgment finding Craig D. Casady and Linda C. Casady (collectively the "Casadys") to be the legal owners of a two-acre parcel of land. Finding no merit to the Fehrings' claims, we affirm.

### Factual and Procedural History

Viewed in the light most favorable to the judgment, the evidence adduced at trial established the following facts. On August 15, 1997, the Casadys sold a house and approximately 26 acres[1] in Newton County, Missouri, to Claudia Sue Jensen ("Clau-

---

1. Although the exact acreage is 26.65 acres, the original property will generally be referred to as 26 acres.

dia").[2] The Casadys conveyed this property to Claudia by a Missouri Warranty Deed—recorded in the office of the Newton County Recorder of Deeds ("Recorder of Deeds") on August 18, 1997. A survey of the 26 acres was conducted at the time of the sale; it provided the legal description and approximate acreage.

In 2005, the Casadys approached Claudia about repurchasing two of the 26 acres they originally sold to her.[3] On March 14, 2005, a survey was completed identifying the two acres, and showing three "SET 1/2X18 PIN[S]" delineating the boundaries of the two acres and Claudia's adjoining property.

On April 29, 2005, Claudia paid Commercial Federal Bank $4,590 for the release of the two acres from the 26 acres the Bank had secured by a promissory note and deed of trust. That same day, the bank executed a "Partial Deed of Reconveyance" releasing any and all interest it had in the two-acre parcel.

In May 2005, the Casadys were told by the title company handling the closing that in order to receive the two acres "free and clear from what [Claudia] owed, so that she could make the sale[,]" the Casadys had to first execute a quit claim deed to Claudia for the entire 26 acres. On May 10, 2005, after the Casadys executed the "Quit–Claim Deed," Claudia executed a "Warranty Deed" to the Casadys conveying the two acres. There is no dispute that the Quit–Claim Deed was executed first, and the Warranty Deed was executed second. The Casadys paid $20,000 for the two acres.

On May 20, 2005, the Partial Deed of Reconveyance from Commercial Federal Bank (timestamped 2:04 p.m.), the Warranty Deed (timestamped 2:06 p.m.), and the Quit–Claim Deed (timestamped 2:08 p.m.) were all recorded, out of order of execution, with the Recorder of Deeds.

Following this purchase, the Casadys did not fence in the two-acre parcel.

On June 30, 2006, Claudia died; Claudia's son, Eric Jensen ("Eric"), was appointed personal representative of the Estate of Claudia Jensen (the "Jensen Estate"). Thereafter, Eric hired Judith Taylor ("Taylor") at Show–Me Real Estate to sell the remaining 24 acres.[4] Taylor knew the two acres were previously sold to the Casadys. As such, Taylor added the words "APPROX. 24 acres" to the real estate sale sign placed at the property so that it clearly stated that the land for sale consisted of only 24 acres.

When the Fehrings became interested in purchasing the remaining 24 acres, Mike West ("West"), at Red Carpet Real Estate, was their real estate agent. The online real estate listing, which the Fehrings saw before the closing, stated that the property consisted of 24 acres. After several offers and counteroffers, the Fehrings agreed to purchase the 24 acres from the Jensen Estate. On September 20, 2007, a "Contract for Sale of Residential Real Estate" ("Contract") was executed by both parties. The Contract between the Fehrings and the Jensen Estate clearly stated that the property consisted of only 24 acres. No legal description was attached to the Con-

---

**2.** Because the Jensens share the same surname, for ease of reference we refer to the Jensens by their first names. We mean no familiarity or disrespect.

**3.** The Casadys continued to own approximately five acres of land abutting the 26–acre parcel.

**4.** Although the exact acreage is 24.40 acres, the property will generally be referred to as 24 acres.

tract. The Contract also provided the Fehrings an opportunity to obtain a survey of the property, which the Fehrings declined to do.

Prior to the closing, West indicated to the Fehrings that he looked into boundary issues regarding the 24 acres and called Mr. Casady to ask if there was a problem with the boundaries or fence line. Mr. Casady responded in the negative because he was unaware of any problem with the boundaries or fence line. Mr. Casady assumed that "they had the survey and knew that [he] owned that two acres in there." There was no evidence that West or the Fehrings ever specifically asked about the Casadys' ownership of the two acres. Eric testified that on the date the 24 acres were sold to the Fehrings, three survey stakes for the two acres owned by the Casadys were easily visible. Eric testified further that every time he walked down to the two acres, "you couldn't miss the stakes. They were there."

At some point, West also obtained a map of the property showing the boundary lines for the two acres titled "Casady" adjacent to the 24 acres. The map included a handwritten statement, "selling all in yellow per Show–Me (Dave)." The two acres marked "Casady" were included in the highlighted yellow area.

Eric testified that at the closing between the Jensen Estate and the Fehrings, conversations occurred among the real estate agents and Mr. Fehring; Eric said he remembered a question arising "about the land within the fence or are we getting everything within the fence or something like that."

At the time of the sale, the October 12, 2007 Deed of Independent Personal Representative from the Jensen Estate to the Fehrings, erroneously contained the legal description for the original 26 acres, which mistakenly included the two acres previously conveyed to the Casadys. Eric testified that the Jensen Estate never intended to convey the Casadys' two acres to the Fehrings during the sale of the 24 acres. The Fehrings admitted that they paid for 24 acres, but received a deed for 26 acres. The Fehrings closed the transaction with the Jensen Estate for a purchase price of $209,000.

After the closing, the Casadys discovered that the Fehrings thought they were owners of the Casadys' two acres. This quiet title lawsuit ensued. At trial, the trial court found in favor of the Casadys and against the Fehrings. This appeal followed.

The Fehrings allege the trial court erred in quieting title in favor of the Casadys because the Fehrings hold superior title in that they "took from a grantor who held record title to the two acres at issue and because [the Fehrings] were unaware of [the Casadys'] claim to the land." In response, the Casadys claim there is substantial evidence that the Fehrings had notice of the Casadys' ownership of the two acres and the Fehrings did not make sufficient inquiry. The primary issue necessary for resolution of this appeal is whether substantial evidence showed the Fehrings had actual notice of the Casadys' interest in the two acres, preventing the Fehrings from holding superior title.

### Standard of Review

■ In a court-tried case, the judgment will be affirmed unless there is no evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *McCullough v. Doss*, 318 S.W.3d 676, 678 (Mo. banc 2010). The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment, and all evidence contrary to the

trial court's judgment is disregarded. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. S.D.2010). The trial court is free to believe all, part, or none of the testimony before it, and this Court must defer to the trial court's credibility determinations. *Id.* "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).[5]

### Analysis

"A suit to quiet title is a special statutory action to adjudge the respective estates, titles and interests of several claimants to land." *McCord v. Gates*, 159 S.W.3d 369, 374 (Mo.App. W.D.2004). In a quiet title action, the burden of proof is upon each party to prove better title than that of his adversary. *Sharp v. Crawford*, 313 S.W.3d 193, 199 (Mo.App. S.D.2010). "The claimant must rely upon the strength of his own title and not upon the weaknesses in the title of his opponent." *Id.* (internal quotation and citations omitted).

Under Missouri law, a bona fide purchaser takes free of adverse claims to prior, unrecorded interests in the property. *Brown v. Mickelson*, 220 S.W.3d 442, 452 (Mo.App. W.D.2007); §§ 442.380, 442.390 and 442.400.[6] " 'A 'bona fide purchaser' is one who pays a valuable consideration, has no notice of outstanding rights of others, and who acts in good faith.' " *Will Investments, Inc. v. Young*, 317 S.W.3d 157, 165 (Mo.App. S.D.2010) (quoting *Community Bank of Chillicothe, Missouri v. Campbell*, 870 S.W.2d 838, 842 (Mo.App. W.D.1993)). "Notice can be either constructive notice under the recording laws or actual notice." *White v. Buntin*, 77 S.W.3d 702, 705 (Mo.App. E.D. 2002).

Here, the Fehrings' claim of superior title is defeated because we find substantial evidence that Fehrings had actual notice of Casadys' interest in the land. "Where surrounding facts and circumstances indicate that a person in possession of property holds it otherwise than through the record owner, appellate courts have uniformly held that the purchaser from the record owner is charged with such knowledge as he or she could obtain by reasonable inquiry from the possessor." *Evans v. Wittorff*, 869 S.W.2d 872, 876 (Mo.App. S.D.1994). "Such notice may be shown by direct evidence, or it may be inferred from facts and circumstances." *Obernay v. Chamberlin*, 506 S.W.2d 446, 450 (Mo. banc 1974). Furthermore, the "knowledge of the realtor as to a boundary problem is imputed to his principals, plaintiffs." *Rainey v. Foland*, 555 S.W.2d 88, 92 (Mo.App.K.C.D.1977). "Equity will not aid those who make contracts or other dispositions as to boundary lines knowing that they might be mistaken, especially where the true location thereof is available by survey." *Id.*

The following facts and circumstances are sufficient to infer the Fehrings had actual or constructive notice of facts that would put a reasonably prudent person upon inquiry of the Casadys' interest in the two acres.

First, the record title itself raises questions as to these two acres. "It is established by ancient, but viable, authority that a purchaser is bound with constructive notice of all recorded instruments and the recitals therein lying within his chain of title...." *Basore v. Johnson*, 689 S.W.2d 103, 109 (Mo.App. S.D.1985). Accordingly, the Fehrings had constructive notice of the following facts from the chain of title: (1) on August 15, 1997, the Casa-

---

5. References to rules are to Missouri Court Rules (2011), unless indicated otherwise.

6. All references to statutes are to RSMo 2000, unless otherwise indicated.

dys conveyed property to Claudia by a Missouri Warranty Deed; (2) on October 15, 2004, Claudia gave a Deed of Trust for the entire property to Commercial Federal Bank; (3) on April 29, 2005, Commercial Federal Bank, for the sum of $4,590, released its Deed of Trust on two acres covered by the October 15, 2004 Deed of Trust; (4) on May 10, 2005, Claudia conveyed two acres to the Casadys by Warranty Deed—the same two acres covered by the April 29, 2005 Partial Deed of Reconveyance from Commercial Federal Bank; and (5) on May 10, 2005, the Casadys quit claimed to Claudia all interest in the entirety of the exact same property covered by their August 15, 1997 Missouri Warranty Deed to Claudia. This is an odd and seemingly illogical recording sequence—it shows Claudia first paid Commercial Federal Bank $4,590 to have the two acres released to her; she then conveyed the two acres to the Casadys by Warranty Deed; and just two minutes later by a Quit–Claim Deed, the Casadys transferred back those two acres to Claudia, along with the original 24 acres in which they had no interest. Because these conveyances plainly were related,[7] the

Fehrings were charged with the notice imparted by this unusual and facially illogical order of recorded documents in their chain of title.

█ Also, West's file contained a map of the properties that clearly delineated the two acres owned by the Casadys. We are compelled to indulge the reasonable inference that West had this map prior to closing. West additionally called Mr. Casady to try to find out if there were any issues with the boundaries and fence line, but his vague question to Mr. Casady did not reveal the problem.[8] West's notice is imputed to the Fehrings, as they concede. *See Rainey*, 555 S.W.2d at 92.

The Fehrings have not convinced us that a trial court could not find, from these and other facts [9] taken together in the light most favorable to the judgment, a duty of further inquiry regarding the two acres. Given our standard of review, therefore, the judgment of the trial court is affirmed.

BATES and SCOTT, JJ., concur.

---

7. We note that in other instances, where deeds have been filed with a Recorder of Deeds just minutes apart, courts have treated them as being filed simultaneously and part of one transaction, noting this is a "difference which can be accounted for in the time taken to endorse the filing." *Causey v. Williams*, 398 S.W.2d 190, 200 (Mo.App.ST.L.D.1965); *See also Hudson Bros. Commission Co. v. Glencoe Sand & Gravel Co.*, 140 Mo. 103, 41 S.W. 450, 454 (1897).

8. We note the only evidence of the Fehrings' alleged inquiry as to the title of the property they were about to purchase was when West contacted Mr. Casady, prior to closing, and asked if he had any problems with the boundary line or the fences. Based on West's ambiguous inquiry, Mr. Casady reasonably believed there were no problems specifically as to the boundaries or the fence line as he had

previously conducted a survey of the two acres and staked out the boundary, and thus, responded in the negative. Where the purchaser is charged with notice of an adverse claim, the purchaser is considered to have " 'notice of such facts as would be disclosed by *reasonable pursuit and proper inquiry.*'" *White*, 77 S.W.3d at 705 (quoting *Hamrick v. Herrera*, 744 S.W.2d 458, 462 (Mo.App. W.D. 1987)) (emphasis added). It is reasonable to conclude the Fehrings' inquiry did not reveal the Casadys' ownership because it was not a proper inquiry as it was vague and too limited in scope. In this case, such reasonable inquiry would have revealed the Casadys' interest in the two acres.

9. E.g., the advertisement, signage, and Contract for 24 (not 26) acres, readily-visible survey stakes marking the two acres, etc.