Larry L. McCORD, Sr. and Edith
Ereline Mccord, Respondents,

v.

Stephen Jewell GATES and Patricia
L. Lloyd, Appellants,

Pete L. Phipps and Carrie
Phipps, Respondents.

No. WD 63319.

Missouri Court of Appeals,
Western District.

Aug. 31, 2004.

Rehearing Denied May 3, 2005.

Christopher C. Fink, Cameron, MO, for appellants.

Larry L. McCord, Jr., Cameron, MO, for respondents, McCord.

Dawn R. Harpster, Cameron, MO, for respondents, Phipps.

Before VICTOR C. HOWARD, P.J., ROBERT G. ULRICH and PATRICIA A. BRECKENRIDGE, JJ.

ROBERT G. ULRICH, Judge.

Stephen L. Gates and Patricia L. Lloyd (now Patricia L. Gates), husband and wife, appeal the August 18, 2003, judgment quieting and confirming title to certain real property in Larry L. McCord, Sr. and Edith Ereline McCord, husband and wife, as against the Gates' claim to the property. The Gates also appeal the portion of the

judgment in this court-tried case quieting and confirming title to certain other real property in Pete L. Phipps and Carrie Phipps, husband and wife, third-party defendants, against any claim of the Gates in this property. The portion of the judgment finding in favor of the McCords and awarding them tract B of the disputed property is affirmed. The portion of the judgment finding in favor of the Phipps and awarding them tract A of the disputed property is reversed. The case is remanded with directions.

## Procedure and Facts

Larry and Edith McCord filed suit to quiet title to certain real property naming Stephen Gates and Patricia Lloyd as defendants. This disputed property is a rectangle and measures approximately thirty feet wide by one hundred thirty-seven feet long and is referred to herein as tract B. The McCords' amended petition asserted that they acquired ownership of a larger area of real property in Clinton County by warranty deed on June 4, 1974. Tract B is located within the legal description of the property thus acquired. The McCords alleged that tract B has been in their and their ancestors' exclusive possession by virtue of a warranty deed dated November 1, 1916, and recorded in the Recorder of Deeds Office, Clinton County. Mr. McCord testified that he obtained the property in 1987 from his father who had obtained the property in 1914 from his father. The McCords further asserted that they have been in open, notorious and hostile possession of the described disputed property since November 1, 1916, apparently referring to their actual possession and that of their ancestors. Mr. McCord claimed to have resided on the property for fifty years. The McCords sought the trial court's judgment awarding them exclusive ownership and the right of possession in tract B.

Stephen Gates and Patricia Lloyd responded to the McCord petition by filing their answer, a counter-claim, and an action in ejectment asserting their ownership and right to possession in property that includes the disputed tract B. They claim to have received a warranty deed to the property on February 14, 1997.

The Gates also filed their third-party claim, naming as third-party defendants Pete and Carrie Phipps, asserting that the Phippses are wrongly in possession of certain other property that the Gates hold by warranty deed. This property is referred to as tract A. The total property in dispute, tract A and most of tract B, all of which is claimed by the Gates, forms a rectangle measuring ninety feet by two hundred thirty-one feet. Thus, tract B references the portion of the total disputed property the McCords claimed to occupy and for which they sought the court's judgment declaring them the rightful owners. Tract A references the portion of the disputed property that the Gates claimed the Phippses wrongfully occupy and for which they sought declaration of rightful ownership. The Phipps answered the cross-claim and were represented at trial. No dispute regarding real property exists between the McCords and the Phippses.

Thus, this is a boundary line dispute between contiguous neighbors. The Gates claim property interests against both the McCords (tract B) and the Phippses (tract A). Mr. McCord testified that a fence once marked what he believed to be the eastern boundary separating the McCord property from what is now the Gates property. The fence was torn down years ago leaving a furrow or ditch that traced the old fence line. A portion of the shallow ditch remains today. Mr. McCord testified that he observed Mr. Gates attempt to fill in the furrow. A large white post

remains along the fence line at the end of the McCord property line indicating the location of the boundary line. Mr. McCord planted an annual garden on the disputed property (tract B) before the Gates moved to their present property, and he continues to plant the annual garden. Mr. McCord testified that he has manifested his claim of ownership and possession of the disputed tract B by planting a garden on the disputed tract B since at least 1987 and by openly asserting ownership of the property, excluding all others from the property except by his exclusive permission, for more than ten years.

Gerald Barnes, a licensed land surveyor with thirty-one years of experience, testified in behalf of the McCords. He surveyed the north/south boundary of the east side of the McCord property, also constituting the west side of the Gates property. He made a drawing reflecting the results of his survey, and it was introduced as Exhibit A without objection. Exhibit A demonstrated a rectangular property 28.54 feet by 137 feet. Mr. Barnes stated that Exhibit A reflects the property disputed between the McCords and the Gates (tract B). Mr. Barnes also stated that the beginning point of the property line is accurately reflected on Exhibit A.

The Gates called Floyd Hayes to testify. He, too, is a licensed surveyor who was hired by the Gates to conduct a survey in the year 2000. He surveyed the disputed property, first examining the deeds that conveyed the Gates property to them, deeds of previous conveyances, and conveyances of adjacent property to both the east and to the west of the Gates property. Tract B of the disputed property is to the west of the Gates property and contiguous to it. The portion of the McCords' property that is not disputed and that is not a part of this suit is south of the Phipps' undisputed property and contiguous to it.

Mr. Hayes stated the confusion is in part attributable to the beginning point referenced in the McCord deed and the beginning point of a 1970 survey of the Cooper Villa plat (then proposed lots and streets for residential construction), developed to the north and east of tracts A and B and not contiguous to them. The beginning points used in the two descriptions is not the same. Mr. Hayes stated that the 1970 survey was errant. The legal description appearing in the Gates 1997 deed is based on the 1970 Cooper Villa plat survey. The legal description in the McCord deed is the same legal description appearing in the 1916 deed transferring title to the McCord property to Mr. McCord's father and describes the real property by referencing its location to and within sections. The Cooper Villa subdivision was platted by the 1970 survey and did not exist when the 1916 McCord deed was recorded. Mr. Hayes said that Walnut Street, a north-south street referenced on the west side of the Copper Villa plat and to the west of the Gates property, which is located both to the south of a portion of the plat and to the west of a portion of the plat, includes a portion of the Phipps and McCord undisputed properties on their west and north-west respectively. He testified the Cooper Villa plat shows that Walnut Street includes the approximately thirty additional feet claimed by the Gates and that the McCord legal description actually includes thirty feet to the west of the property they now occupy and not the approximately thirty feet to the east of the property that they now occupy and claim as tract B. The confusion is due to the errant 1970 survey and other errors, including the establishment of a section boundary by survey of greater length than that of a standard section boundary. Mr. Hayes attributes these errors for the approximately thirty foot conflict between the parties' property claims to the east of the Phipps and

McCord properties and to the west of the Gates property. The Gates legal description makes no references to sections, as does the McCord legal description. It references the Cooper Villa, and, thus, the errant 1970 survey represented by the Cooper Villa plat of record. Mr. Hayes' conclusion was that, although the McCord legal description is the same as that of the 1916 deed, the deed does not encompass any of the disputed property, and particularly tract A, because the location of the deed description was errantly identified on the ground. The Gates legal description as stated in their 1997 deed includes the disputed tracts A and virtually all of B.

Mrs. Gates testified that she and her husband claim the disputed property identified as tract A and virtually all of tract B, which are to the west of the Gates undisputed property. She claims ownership and the right to possession of the property described in the legal description of the property that she acquired in 1997, which she claims includes the disputed tracts A and B. She also stated that the disputed property identified as tract A was land upon which she and her husband maintain a garden. A shed had been on the property, but she and her husband tore it down when tenants that lived in the Phipps' home before they acquired it put trash in the building.

The Phipps did not testify and did not offer any other evidence.

Following presentation of the evidence, the trial court awarded the legal rights appurtenant to ownership of tract B as specifically identified by Mr. Hayes' survey to the McCords, finding that they acquired that portion of the disputed property by adverse possession by their open, notorious and undisputed tenancy of the property for a period in excess of seventy-five years prior to the institution of the suit and that they have continuously paid the taxes and assessments levied against the lands during that time.

The court also determined that the Phipps had acquired the portion of the disputed property referenced as tract A by adverse possession, finding that they, too, had held undisputed possession of the contested property openly and notoriously for a period of seventy-five years prior to the institution of the suit and that they had paid the taxes and assessments levied against such lands during that time.

The Gates appeal the court's judgment.

## Standard of Review

"The standard of review for court-tried quiet title actions is the same as in other court tried cases...." *Shoemaker v. Houchen*, 994 S.W.2d 40, 44 (Mo.App.W.D. 1999). The standard of review in a court tried case provides that "the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

When determining whether the evidence is sufficient to support the judgment, appellate courts review the evidence and all reasonable inferences from such evidence in the light most favorable to the trial court's judgment. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). Any evidence contrary to the decision is disregarded. *Id.* Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses upon appellate review of a case tried without a jury. Rule 84.13(d)(2). The trial court is vested with the discretion to believe or disbelieve all, part, or none of any witness' testimony. *T.B.G.*, 772 S.W.2d at 654.

## Point 1

The Gates assert as their first point that the trial court erred in holding that the Phipps are vested with title to certain real property with dimensions of 28.54 feet by 94.00 feet because the Phipps neither alleged in pleadings nor established by evidence that they are entitled to the real property granted by the trial court.

The real property (tract A) is identified in the court's judgment as follows:

A tract of land in the Northeast Quarter of the Northwest Quarter of Section 26, Township 57 North, Range 30 West, Clinton County, Missouri described as follows: Beginning at the Southeast corner of said Northeast Quarter of the Northwest Quarter of said Section 26; thence N89 26'11"W, along the south line of said Northeast Quarter, 336.36 feet; thence N00 08'38"W, 137.00 feet; to the True Point of Beginning. Thence N89 26'11"W, 28.54 feet, thence N00 08'38"W, 94.00 feet; thence S89 26'11"E, 28.54 feet; thence S00 08'38"E, 94.00 feet to the point of beginning. And being subject to any roads, easements or restrictions of record.

The court further noted in its judgment that

the property involved in this action, is improved and devoted to residential purposes; that the Third–Party Defendants, Pete L. Phipps and Carrie Phipps, through their tenant and through tacking of the occupiers of the land before them, have held open, notorious, and undisturbed possession of said lands for a period in excess of Seventy–Five (75) years prior to the institution of this suit and have continuously paid the taxes and assessments levied against such lands during that time.

Normally, the remedy for a boundary dispute between neighbors is not a quiet title action but an action in ejectment. *Moss v. Moss,* 706 S.W.2d 884, 888 (Mo.App. W.D.1986). However, because neither party admitted the title of the other and the evidence demonstrated a lack of mutual acknowledgement by the parties of the title source and legal description of the other's ownership, a quiet title action and the form of the trial court's judgment is appropriate here. *See Mass. Gen. Life Ins. Co. v. Sellers,* 835 S.W.2d 475, 482 (Mo.App. S.D.1992)(although ejectment is normally proper remedy in boundary dispute, where neither party admitted title of the other and pleadings and evidence demonstrated lack of mutual acknowledgement by parties of title source and legal description of other's ownership, quiet title action appropriate). "In a quiet title action, where each party is claiming title against the other party, the burden of proof is upon each party to prove better title than that of his adversary. The claimant must rely upon the strength of his own title and not upon the weaknesses in the title of his opponent." *Shuffit v. Wade,* 13 S.W.3d 329, 332–33 (Mo.App. S.D.2000)(quoting *Ortmeyer v. Bruemmer,* 680 S.W.2d 384, 395 (Mo.App. W.D.1984)). A suit to quiet title is a special statutory action to adjudge the respective estates, titles and interests of several claimants to land. *Moss,* 706 S.W.2d at 887. In order to prevail in a quiet title action, it is not necessary that plaintiffs establish an indefeasible title against the whole world, but only that their title is good as against the defendants. *Id.* Plaintiffs in a quiet title suit must succeed on the strength of their own title and if they fail to prove, prima facie, that they hold record title, their cause must fail. *Id.* In a quiet title suit, it is not necessary that there be any evidence to support a defendant's verdict. *Id.*

No evidence, neither testimony nor documentation, was introduced to support a

proposition that the Phipps own or possess tract A. The only evidence regarding the ownership and possession of disputed tract A was the testimony of Land Surveyor Troy Hayes and supporting exhibits regarding the entire disputed property, both tracts A and B, and Mrs. Gates' testimony. Nothing in the testimony of either witness or in any exhibits supports the position that the Phipps own or possess the disputed tract A or that they have adversely possessed the said property for ten or more years. The portion of the judgment awarding the disputed tract A to the Phipps is reversed.

### Point 2

 The Gates claim as point two that the trial court erred in finding that the McCords acquired title to tract B of the disputed property by adverse possession, claiming that the evidence was insufficient to establish the required elements of adverse possession and that the McCords failed to properly plead a right to the property the court awarded to them. The Gates do not argue that any one of the elements required to establish a right to property by adverse possession was not met. They argue only that the description stated in the McCord petition was not the legal description of the property awarded them by the court. They also acknowledge that the legal description of the disputed tract B contained in the court's judgment is correct.

The Gates are correct that the legal description stated in the McCords' petition is not the description of the property awarded by the court. The property awarded by the court to the McCords was the property referenced and identified by Mr. Hayes during his testimony and in Defendant's Exhibit 6, the drawing prepared by him of the results of his survey specifically identifying the disputed tracts A and B. Additionally, Mr. Barnes' testimony and his drawing of the disputed tract B, considered with Mr. Hayes' drawing, conclusively establish the correct property contested between the McCords and the Gates. Mr. McCord testified to facts that demonstrated his occupancy of tract B since at least 1987 was open and hostile possession, for more that ten years, having annually planted a garden on the tract and having during the time of his possession openly claimed ownership, controlling access to the property to the exclusion of all others.

 Generally, relief granted by a judgment is limited to that sought in the pleadings. *State ex rel. Mohart v. Romano*, 924 S.W.2d 537, 540 (Mo.App. W.D. 1996). To the extent a judgment goes beyond the issues presented and raised by the pleadings, it is void. *Id.* The McCords claim, however, that Rule 55.33(b) applies, which provides that issues not raised in the pleadings but which are tried by either express or implied consent of the parties are treated as having been properly pleaded. *Shoemaker v. Houchen*, 994 S.W.2d 40, 46 (Mo.App. W.D.1999). "Failure to timely and specifically object to evidence beyond the scope of the pleadings constitutes implied consent for determination of the issues raised." *Conduff v. Stone*, 968 S.W.2d 200, 205 (Mo.App. S.D.1998)(quoting *Rice v. James*, 844 S.W.2d 64, 67 (Mo. App. E.D.1992)). A court should be liberal in permitting amendments to conform to the evidence, but the matter is primarily within the sound discretion of the trial judge whose ruling will not be disturbed absent obvious abuse of that discretion. *Cremer v. Hollymatic Corp.*, 12 S.W.3d 363, 369 (Mo.App. W.D.2000). "The implied consent rule applies only where the evidence presented bears solely on the unpleaded issue and not upon issues already in the case," however. *Mohart*, 924

S.W.2d at 540 (quoting *Mo. Dental Bd. v. Cohen,* 867 S.W.2d 295, 297 (Mo.App. W.D. 1993)). *See also Coleman v. Mantia,* 25 S.W.3d 675, 677 (Mo.App. E.D.2000)(where issue of comparative fault was not pled in pleadings and not tried by implied consent); *Conduff,* 968 S.W.2d at 205(where plaintiffs failed to plead boundary acquiescence and it was not tried by implication in action to quiet title); and *Rice,* 844 S.W.2d at 67 (where issue of illegality of agreement was not pled as required but was tried by implied consent).

 The doctrine expressed by the rule is not applicable when the evidence presented addresses an issue raised by the pleadings. The issue addressed by the pleadings and the evidence during the trial in this case is the same: who owns the property and is entitled to possession of the disputed tract B. The correct legal description demonstrated by the evidence varied from that stated in the petition, but the variance was not fatal to the proceedings. The evidence revealed the correct legal description of the property, introduced by the Gates through Mr. Hayes, and the evidence applied to the necessary elements to prove a claim of adverse possession of the actual piece of ground contested. A party claiming title by adverse possession must show that possession of the property was actual, hostile and under a claim of right, open and notorious, exclusive and continuous for ten years. *Crowe v. Horizon Homes, Inc.,* 116 S.W.3d 618, 621 (Mo.App. E.D.2003). Mr. McCord's testimony, the testimony of Mr. Hayes and Mr. Barnes, and the exhibits further identifying and describing the contested tract B was sufficient for the court to find the elements of adverse possession as to the McCords' claim to tract B.

The portion of the judgment quieting and confirming title of that portion of the disputed property described in Larry L. McCord, Sr. and Edith Ereline McCord is affirmed. That portion of the judgment quieting and confirming title of the portion of the disputed property described in Pete L. Phipps and Carrie Phipps is reversed. The case is remanded with directions that the trial court enter judgment consistent with Stephen J. Gates and Patricia L. Lloyd (Gates) having prevailed on their quiet title action against the Phippses and on their petition for ejectment against Pete L. Phipps and Carrie Phipps.

HOWARD, P.J., and BRECKENRIDGE, J., concur.