**J.P. SHARP and Dorothy J. Sharp, Appellants/Cross–Respondents,**

v.

**Joyce CRAWFORD, Valisa Michelle Nelson, and Brian Alexander, Respondents/Cross–Appellants,**

and

**Jasper County Commissioners, Respondents.**

Nos. SD 29859, SD 29870.

Missouri Court of Appeals, Southern District, Division One.

June 8, 2010.

Albert D. Johnson, Carthage, for Appellants.

Ronald G. Sparlin, Joplin, for Respondents.

ROBERT S. BARNEY, Judge.

The litigation giving rise to these consolidated appeals involves competing claims to quiet title to certain real properties on either side of a fence line; differing contentions as to the true location of the fence line; an action to recognize the vacation of an old county road or a declaration that the road had already been vacated by court order; and claims of damages for trespass and injunctive relief. Due to deficiencies in the trial court's judgment, we are compelled to reverse and remand with directions.[1]

In this consolidated appeal, J.P. Sharp ("Mr. Sharp") and Dorothy J. Sharp ("Mrs. Sharp") (collectively "Appellants") appeal the trial court's "Amended Findings

---

1. As is not unusual in these types of cases, the underlying matter was vigorously contested by both parties. We commend both the patience and skill of the trial court during the course of litigation and the individual attorneys for their advocacy skills.

of Fact, Conclusions of Law, and Judgment" ("the Amended Judgment"). They bring five points of trial court error. Joyce Crawford ("Mrs. Crawford"), Valisa Michelle Nelson ("Ms. Nelson"), and Brian Alexander ("Mr. Alexander") (collectively "Respondents") also appeal from the trial court's judgment and they raise three points of trial court error.[2]

Viewing the record in the light most favorable to the trial court's judgment, *Schroeder v. Proctor*, 280 S.W.3d 724, 726 (Mo.App.2009), the record generally shows that Appellants are the owners of approximately sixteen acres located in Jasper County, Missouri. Their eastern property line adjoins the western property line of an approximately thirty-seven acre tract owned by Mrs. Crawford.[3]

In 1968, Mrs. Crawford and her now deceased husband purchased their acreage which included the property now owned by Appellants. At that time, County Road 19C ("CR 19C") crossed diagonally through this tract of land, then turned to the south and connected County Road 97 to Old Highway 66. Shortly after purchasing the property, Mrs. Crawford and her husband built a barbed wire fence several feet from the east side of CR 19C which ran parallel to the roadway. This fence has remained in that location since that time and Respondents have been responsible for maintaining the fence line. Both properties are located in a flood plain such that parts of the fence line would periodi-

cally get washed away, which necessitated repairs to various parts of the fence line by Respondents who would occasionally only be able to access their fence line by utilizing the property on the west side of the fence line belonging to Appellants.

In 1980, Mrs. Crawford, her husband and several other local landowners petitioned the Jasper County Commission to vacate CR 19C and have the road closed to the public. On August 11, 1980, the Commission entered "County Order No. 26" which directed that CR 19C be vacated.[4]

In 1987, Appellants began negotiating with Mrs. Crawford to purchase the western sixteen acres of their larger tract. A survey of the property was commissioned and it was performed by Charles Miller ("Mr. Miller"). This survey revealed that CR 19C was located entirely on the property being considered for purchase by Appellants. Appellants ultimately purchased their property from Mrs. Crawford and her husband for $12,500.00, and Mrs. Crawford and her husband duly executed a general warranty deed at that time.

Following the death of Mrs. Crawford's husband in 2003, Ms. Nelson and Mrs. Crawford became concerned about the exact location of the western boundary of Mrs. Crawford's property. Appellants provided them with a copy of the survey performed by Mr. Miller, and Respondents then hired Allgeier, Martin and Associates, Inc. to perform a survey for them. Mon-

2. We note that although the Jasper County Commissioners ("the Commissioners") were litigants below, they do not appear in this appeal.

3. Ms. Nelson is Mrs. Crawford's daughter and Mr. Alexander is Ms. Nelson's companion. They reside together on this tract of land owned by Mrs. Crawford.

4. There is a clear dispute as to whether the legal description in the county's order actual-

ly corresponded with the legal description for CR 19C. Appellants presented evidence and testimony at trial that CR 19C was the only road in the area that met the description set out in the court order. They maintained at trial, and in this appeal, that the road is an abandoned road. Respondents now maintain otherwise. One of the surveys entered into evidence in this matter sets out a metes and bounds description of CR 19C.

nie Sears ("Mr. Sears") was in charge of the survey. Mr. Sears also found that CR 19C was located *entirely* on Appellants' property and generally agreed with the prior survey performed by Mr. Miller with the exception of the location of one post. Mr. Sears also determined that the western boundary of Respondents' land ran essentially down an irregular fence line located just east of CR 19C.

In 2006, Appellants placed base rock on a large portion of CR 19C and built an asphalt driveway from County Road 197 to just south of their home and shop. They also placed a gate at the north end of the asphalt road near County Road 197 and another gate just south of their home where CR 19C crossed over a creek.

As previously related, throughout the time period from 1987 until 2006, the parties recognized the fence line as the boundary between their properties and Respondents maintained the actual fence.

The parties' relationship began to deteriorate some time in 2006 when, according to Mrs. Sharp, Respondents cut down a honeysuckle plant which was growing on the fence line and that had been planted by Mrs. Sharp on her side of the fence. Thereafter, in maintaining the fence line Respondents burned brush and weeds which were located near the fence line but which were actually situated on Appellants' side of the fence. Respondents contended that these incidents were merely related to their maintenance of their fence line and were not malicious in nature. At some point, according to Respondents, Appellants purportedly piled dirt and rocks against the fence such that when the creek flooded, the water flow slowed, put more pressure on the fences owned by Respondents, and impaired Respondents' ability to repair the fence. The animosity between the parties continued to grow and law enforcement officials became involved in their squabbles on several occasions. Further, sometime in 2008 Appellants vacated their property altogether, relocated into town, and began looking for someone to purchase their property. According to Appellants, they had two contracts on their property fall through due to the dispute with Respondents about the boundary line and the issue relating to whether CR 19C was, indeed, a vacated road. On July 25, 2008, a restraining order was entered which forbade the movement of any fences in the disputed area around the fence line. This order was later modified on October 15, 2008, to also enjoin Appellants and their tenants from encroaching on Respondents' land. On November 10, 2008, Appellants filed a petition for declaratory judgment pursuant to section 228.190, RSMo Cum.Supp.2007, against the Commissioners. In this petition, Appellants sought a declaration from the trial court that CR 19C had been abandoned and was no longer a public road. They asserted that in 1980 a court order was entered declaring CR 19C to be closed, that Jasper County blocked the entrances to the road at that time, that thereafter county funds were not expended for its upkeep, that per section 228.190, RSMo Cum.Supp.2007, the public had not been using the road for over five years, and that Appellants had actually been maintaining the road since they purchased their property in 1987. This was followed on November 20, 2008, with Appellants filing their three-count amended petition against Respondents. The foregoing claims were tried together.

In their first count for trespass, Appellants asserted the currently existing fence line was located entirely on their property and did not represent "the true boundary line" of the properties; that Respondents had regularly, intentionally, and repeatedly trespassed on their property by treating the fence line as if it belonged to them by

cutting down honeysuckle vines and other plants on the fence line, by spraying chemicals on the fence line, by burning the ground on the fence line, by otherwise maintaining a fence which was not located on Respondents' property, and by removing "a portion of the fencing;" and that they had requested Respondents cease and desist from such actions to no avail. They also asserted that due to these acts of trespass they suffered actual damages in the amount of $1,000.00 and also sought "exemplary" damages in the sum of $100,000.00.

In their second count, Appellants sought a restraining order and injunctive relief from the continued trespass on their property by Respondents, and from various acts of harassment and intimidation they and their guests had purportedly received at the hands of Respondents. Appellants asserted Respondents repeatedly had interfered with their use and enjoyment of their property such that irreparable harm had occurred to their property interests.

In their third count, Appellants sought to quiet title to that land described in the general warranty deed conveyed to them in 1987; asked the trial court "to define and adjudge by its judgment and decree that [they] are the fee simple owners of, in and to said real estate;" and further sought the trial court's determination that Respondents have no right, title, or interest in and to the real estate. They further maintained that "there exists between the parties[' properties] an old fence which does not represent the true boundary line; that two surveys have been made of the lands based on their deeds and that both surveys show that the fence lies entirely on the property of [Appellants]." Appellants also pleaded adverse possession in that they "have been in open, notorious, exclusive, continuous, adverse, and hostile possession of the [property at issue] under color of title and under claim of ownership ..." for a period of time in excess of ten years.

On December 31, 2008, Respondents answered Appellants' amended petition with particular denials and counterclaimed against Appellants. In count one of their counterclaim, Respondents sought a declaratory judgment pursuant to section 527.010, RSMo 2000, that the boundary line between the parties' properties was located in the middle of "the abandoned road formerly known as CR 19C," and that the existing fence line to the east had been erected by Respondents on property they legally owned.

As best we discern, in the second count of their counterclaim Respondents asserted that since 1987 until about 2006 the parties "acknowledged that each party owned contiguous real property that meets in the middle of an abandoned road formerly known as County Road 19C." Respondents then requested a declaratory judgment from the trial court quieting title in themselves based on adverse possession to land described as being "located on the west edge of [Respondents'] property...." They maintained they had for ten years "been in actual, open, notorious, exclusive and continuous possession of the [property] under claim of ownership." Respondents then prayed for the trial court to enter a judgment determining Appellants "have no right, title, or interest in and to the [property] described in paragraph 6 above ....."[5]

In their third count for trespass, Respondents alleged that "[b]etween the respective properties owned by the parties is an old abandoned road formerly known as

---

**5.** We note paragraph 6 of Respondents' second count is a metes and bounds description of what appears to be their entire tract of land.

[CR] 19C. Each party's property has a common border that is located in the middle of said abandoned road." They maintained Appellants repeatedly trespassed on their property by crossing over to their side of the aforementioned abandoned road; that Appellants "have bulldozed, torn down, removed, moved, and/or buried [Respondents'] erected fence line, fence posts and trees;" and that Appellants dumped "concrete, tile and other various objects onto [their] land." As such, they posited entitlement to a judgment for damages in the amount of $5,000.00 and $100,000.00 in "exemplary/punitive" damages.

On May 4, 2009, following a bench trial, the trial court ultimately entered its Amended Judgment *nunc pro tunc* which consisted of six, single spaced pages. In pertinent part, the trial court's Amended Judgment found that the 1980 court order vacating CR 19C was valid "and that CR 19C was vacated as the County Court followed the procedure to close a county road and that the legal description was sufficient to place land owners and the public on notice." It further found that "even if the road had not been properly vacated by the County Court [in 1980] this Court would find CR 19C to be abandoned and vacat[ed] ..." under section 228.190, RSMo Cum.Supp.2007.

Additionally, the trial court found that the parties' properties were located in a flood plain such that following heavy rains Respondents were often unable to access portions of their property due to rising waters and that during these times of flooding their only access to their property was by using former road CR 19C which is now Appellants' driveway. As a result, the trial court found that section 272.110, RSMo Cum.Supp.2001, "allows [Respondents] to go onto [Appellants'] property and use their driveway and gravel road during or after flooding to check their fence line and to fix the fence if necessary."

The trial court further determined that Respondents "have always maintained the fence line between the two properties at their expense;" that both parties *"have always treated the fence as the property of [Respondents] and all property west of the fence line as the property of [Appellants] except for the portion by the creek bank and the road going to Highway 66;"* that "after flooding [Respondents] moved the fence line by necessity while rebuilding the fence ...;" and that Appellants were not damaged by this action. (Emphasis added).

The trial court also found that "[e]ven though *the deed* shows the property line of [Respondents] to run a little to the east of the fence in most areas ... the fence [is] the property of [Respondents];" that "any property that runs to the east of the fence line that would be [Appellants] under the deed description belongs to [Respondents];" and that *"any property that runs to the west of the fence which the deed would grant [Respondents] remains the property of [Respondents]."* (Emphasis added).

The trial court then "ORDERED AND ADJUDGED" that: CR 19C "is hereby ... abandoned and vacated and that said [CR] 19C is now the driveway and gravel road owned by [Appellants], and is the private property of [Appellants] ...;" it found "in favor of [Respondents] on Count I [for trespass] and Count II [for injunctive relief] of [Appellants'] Amended Petition ...;" it found *"in favor of [Appellants] as to Count I of [Respondents'] counterclaim* [for declaratory judgment which requested the trial court find the common border of the parties' property was located in the in the middle of 'abandoned' CR 19C];" it found in relation to

Respondents' counterclaim Count II for quiet title that *"each party has sole right, interest and title in their property per their [re]spective deeds except for the fence line as described above . . .;"* and it found "in favor of [Appellants] on [Respondents'] counterclaim Count III [for trespass] and IV."[6] (Emphasis added). The trial court also ordered that "each party be responsible for their own cost." These appeals followed.

"When reviewing a declaratory judgment, an appellate court's standard of review is the same as in any other court-tried case." *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 413 (Mo. banc 2001); *see McDermott v. Carnahan*, 934 S.W.2d 285, 287 (Mo. banc 1996). "That is, the trial court's decision should be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Guyer*, 38 S.W.3d at 413; *see Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In a court-tried case involving a quiet title action, review of the trial court's judgment is also governed by the tenets espoused by *Murphy*, 536 S.W.2d at 32. *Schroeder*, 280 S.W.3d at 726. "All evidence and inferences are viewed in the light most favorable to the judgment, and all contrary evidence and inferences are disregarded." *Id.* "Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses upon appellate review of a case tried without a jury." *McCord v. Gates*, 159 S.W.3d 369, 373 (Mo.App.2004); *see* Rule 84.13(d)(2). "The trial court is vested with the discretion to believe or disbelieve all, part, or none of any witness' testimony." *McCord*, 159 S.W.3d at 373.

"'In a quiet title action, where each party is claiming title against the other party, the burden of proof is upon each party to prove better title than that of his adversary. The claimant must rely upon the strength of his own title and not upon the weaknesses in the title of his opponent.'" *McCord*, 159 S.W.3d at 374 (quoting *Shuffit v. Wade*, 13 S.W.3d 329, 332–33 (Mo.App.2000)). "A suit to quiet title is a special statutory action to adjudge the respective estates, titles and interests of several claimants to land" and "[i]n order to prevail in a quiet title action, it is not necessary that plaintiffs establish an indefeasible title against the whole world, but only that their title is good as against the defendants." *Id.*; *see Moss v. Moss*, 706 S.W.2d 884, 887 (Mo.App.1986). "Plaintiffs in a quiet title suit must succeed on the strength of their own title and if they fail to prove, prima facie, that they hold record title, their cause must fail." *McCord*, 159 S.W.3d at 374.

We initially note that section 527.150, RSMo 2000, "permits a person claiming title or an interest in real estate to bring an action to determine the respective interests of the parties. The court in which a quiet title action is brought must adjudicate the interests of all the parties." *Main St. Feeds, Inc. v. Hall*, 975 S.W.2d 227, 233 (Mo.App.1998); *see Pitts v. Pitts*, 388 S.W.2d 337, 339 (Mo.1965). "This [C]ourt may not speculate, however, as to the grounds on which the trial court based its ruling. A judgment based on findings that are inconsistent and ambiguous does not permit appellate review [and] must be reversed." *Main St. Feeds*, 975 S.W.2d at 233–34; *see Burton v. Donahue*, 959 S.W.2d 946, 948 (Mo.App.1998). Stated another way, a "judgment cannot stand when it is based on findings of fact which are antagonistic, inconsistent, or contradic-

6. We note there was no Count IV in Respondents' counterclaim.

tory as to material matters, or when it is based on conclusions of law which are at variance with the findings of facts." *Donnelly v. Donnelly,* 951 S.W.2d 650, 653 (Mo.App.1997).

Turning to the judgment at hand, there appears to be a conflict between the trial court's findings in a paragraph on page 5 of its Amended Judgment. To-wit the first full paragraph on page 5 of the Amended Judgment states:

> [b]oth [Appellants] and [Respondents] have always treated the fence as the property of [Respondents] and all property east of the fence line as the property of [Respondents] and all property west of the fence line as the property of [Appellants] except for the portion by the creek bank and the old road going to Highway 66.

This should be contrasted with the trial court's findings in the same paragraph that:

> [e]ven though *the deed* shows the property line of [Respondents] to run a little to the east of the fence in most areas, the Court finds the fence to be the property of [Respondents]. The Court also finds any property that runs to the east of the fence line that would be [Appellants] under *the deed description* be-

longs to [Respondents]. The Court also finds any property that runs to the west of the fence which the deed would grant to [Respondents] remains the property of [Respondents].

(Emphasis added). Additionally, we are not certain which one of the two deeds entered into evidence the trial court is making reference to in its findings. "This [C]ourt is unable to definitively rule on the issues due to ambiguities and seeming inconsistencies in the trial court's judgment." *Brick House Café & Pub., L.L.C. v. Callahan,* 83 S.W.3d 43, 45 (Mo.App. 2002).

Furthermore, we are at a loss to understand the exact meaning of the following paragraph:

> IT IS FURTHER ORDERED AND ADJUDGED in [Respondents'] Counterclaim Count II that each party has sole right, interest and title in their property per their [re]spective deeds except for the fence line as described above.

In many respects, this judgment is remarkably similar to that which was found to be lacking in *First Savings Bank v. Peters,* 797 S.W.2d 574, 575 (Mo. App.1990).[7] While the trial court has pur-

---

7. The trial court's judgment in *First Savings Bank,* 797 S.W.2d at 575, did not contain a legal description and contained only the following judgment:

> [a]nd now on this 30 day of October, 1989, the Court takes from advisement this cause and considers the petition for quiet title in Count I filed by plaintiff, and the plaintiff's petition in Count II for slander of title, and on plaintiff's petition against the defendants Gerald Peters and Forest Lynch, the Court enters judgment in favor of said defendants and against the plaintiff on Count I, and judgment for the said defendants and against the plaintiff on Count II, with all costs taxed to the plaintiff.
> And now the Court considers the third party petition filed by third party plaintiffs,

> Robert D. Strong and Mary E. Strong, against the third party defendants named herein, and the Court enters judgment in favor of third party defendants and against third party plaintiffs, with all costs taxed to the plaintiffs.
> WHEREFORE, IT IS THE ORDER, JUDGMENT AND DECREE OF THIS COURT, that the defendants Gerald Peters and Forest Lynch have judgment against the plaintiff on Count I of plaintiff's petition for quiet title, and on Count II for slander of title.
> It is the further order of the Court that third party defendants named have judgment on the issues raised by the third party plaintiffs named, with all costs in this cause taxed to the plaintiff.

portedly quieted title to each party in consonance with the legal description set out in their respective deeds, these deeds have not been described by metes and bounds in the judgment. Nor has the trial court recognized fee simple ownership of the respective parties. In particular, we cannot ascertain by the judgment the exact description by metes and bounds of the location of "any property that runs to the west of the fence which the deed would grant to [Respondents]...." Additionally, the precise location of the fence line is not delineated nor described with reasonable certainty at any point in the Amended Judgment. "It is all important that decrees affecting title to real estate should describe the land in question with certainty." *Williams v. Pemiscot Cty.*, 345 Mo. 415, 133 S.W.2d 417, 419 (1939); *see Anderson v. Howald*, 897 S.W.2d 176, 179 (Mo.App.1995) (holding that "[i]n a quiet title action, the judgment must describe with reasonable certainty the real estate affected by the decree"). "The judgment should be in a form so that it alone is suitable for recording in real estate records." *Creech v. Noyes*, 78 S.W.3d 223, 225 (Mo.App.2002). "A judgment that fails to adequately describe the property leaves open the possibility of future adjudication regarding the scope *and location* of the property affected by the judgment, and necessarily requires proof from an external source." *Id.* (Emphasis added). While we are empowered to enter the judgment "the court ought to give" pursuant to Rule 84.14, Missouri Court Rules (2009), we are unable to do so here because the legal descriptions of both the fence line and lands that have been quieted are "not readily apparent from the record." *Skinner v. Osage Cty.*, 822 S.W.2d 437, 443 (Mo.App.1991). Accordingly, the judgment must be reversed and the cause re-

manded for entry of a judgment in conformance with this opinion. *See First State Savings Bank*, 797 S.W.2d at 575. "If the trial court believes that additional evidence should be allowed [so that it may] be fully informed in adjudicating title ...," or any other matter engendered by the pleadings, it may do so. *Id.* "If required, and we are not suggesting that it is, the trial court can direct a survey to determine the facts necessary for a proper judgment and to tax ..." the expenses as cost to both parties. *Id.*

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

BATES, P.J., and BURRELL, J., Concur.