

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| CAROLYN CASTEEL, ET AL., | ) | |
| | ) | |
| Respondents, | ) | WD86164 |
| | ) | |
| V. | ) | OPINION FILED: |
| | ) | MARCH 19, 2024 |
| CHARLES LAMMERS, ET AL., | ) | |
| | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Joshua Calvin Devine, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Edward R. Ardini, Jr., Judge, and W. Page Bellamy, Special Judge

Charles and Jacqueline Lammers ("the Lammerses") appeal the judgment of the Circuit Court of Boone County, Missouri ("trial court"), following a bench trial, quieting title in an easement between the Lammerses' property ("Lammers property") and the property of their landlocked neighbors, Carolyn Casteel and her adult children ("the Casteels"), and defining the easement according to a survey completed in 2008.  The judgment also granted injunctive relief, ordering the Lammerses not to interfere with the Casteels' use of the easement for ingress and egress to their property ("the Casteel property"), including the removal of a fence that was placed by the Lammerses within the easement.  Finally, the judgment increased the width of the easement from thirty feet to

forty feet pursuant to section 228.342,[1] five feet of such increase to be on the Casteel property and five feet of such increase to be on the Lammers property, because the current easement was insufficient for ingress and egress to the Casteel property.

On appeal, the Lammerses claim that the trial court erred in: (1) denying the Lammerses' motions to dismiss and for directed verdict in that the Casteels' action for quiet title was barred by the ten-year statute of limitations set forth in section 516.010; (2) denying the Lammerses' motions to dismiss and for directed verdict in that an action for quiet title is not the proper cause of action for a boundary dispute; and (3) granting the Casteels' request to widen the easement to forty feet because the Casteels failed to show "strict necessity" for the increase in that the increase was only for the Casteels' convenience. We affirm the judgment of the trial court.

## Factual and Procedural Background

The Casteels and the Lammerses own real estate adjacent to each other in rural Boone County with a common boundary line that runs essentially east-west, but is quite curvy. The Casteels own the property to the north of the boundary, and the Lammerses own the property to the south.[2] Many years ago, a thirty-foot-wide public county road ran along the property line separating the Casteel and Lammers properties, the center line of the road being the starting point for the description of the property boundary. A 1904

---

[1] All statutory references are to the Revised Statutes of Missouri (2016) as updated by supplement, unless otherwise indicated.

[2] Another family, the Henleys, own property to the east of the Casteel property and also to the north of the Lammers property. The Henleys entered into a consent judgment with the Casteels and are not part of this appeal.

2

survey described the boundary line as being "thence with the center of the county road." There were no survey monuments placed as part of the 1904 survey; the road constituted the monument. The public road has been long since abandoned by the county and is not maintained.[3] The property description of the 1904 survey was the language used to convey the Casteel property to Carolyn Casteel's ex-husband by a deed that was recorded in 1993.[4]

In 2008, a surveyor hired by the Casteels ("Surveyor")[5] performed a survey of the county road to determine the boundary line between the Casteel property and the Lammers property. Surveyor testified at the trial as to the methods he used, why he disagreed with prior surveys that had been conducted, and that his survey was recorded to "provide the public with notice that [the Casteels were] aware of the title problem that's been created by these resurveys and not being—marking the middle of the existing former county public road."

In 1959, a deed transferring the Lammers property to Jacqueline Lammers's father described the property boundary as "lying south of the new county road." In 1979, another survey was performed to determine the boundary line, but according to Surveyor, that survey failed to account for the curves in the old county road. Also, in the late

---

[3] Neither party contests that the roadway had been abandoned, and the roadway property had reverted to their predecessors in title as adjoining landowners. *Rice v. Huff*, 22 S.W.3d 774, 781 (Mo. App. W.D. 2000).

[4] Carolyn Casteel's ex-husband quitclaimed his interest in the Casteel property following their divorce using a different property description that referenced a survey conducted in 1999. This discrepancy does not affect our analysis of the issues presented in this matter.

[5] Pursuant to section 509.520, we do not include the names of witnesses other than parties.

1970's, a man who formerly owned both the Casteel property and the neighboring Henley property sold the Henley property, rendering the Casteel property landlocked. In order to access the Casteel property, which the man still owned, he entered into an agreement with Mrs. Lammers's father creating an easement for ingress and egress to the landlocked property spanning fifteen feet in either direction of "the centerline of the old road," for a total of thirty feet. When the Lammers property was deeded to the Lammerses, the 1979 survey was referenced.

At some point, the Lammerses erected some barbed wire fencing that was located partially within the easement, regardless of which survey accurately described the property boundary; the fencing moved over time. In addition, at some point, the Casteels were informed that UPS and emergency vehicles would not come to the Casteel property because the road was too narrow to safely access the property.

The Casteels brought the present action seeking judgment from the trial court to quiet title and to determine which of the property descriptions contained in the deeds and the various surveys accurately described the property boundary and easement. The Casteels also sought injunctive relief, asking the trial court to enjoin the Lammerses from interfering with or obstructing the easement. Finally, the Casteels asked the court to widen the roadway easement pursuant to section 228.342 to forty feet so that the private road could be widened by five feet on the Lammers side of the property boundary to accommodate ingress and egress to the Casteel property.

At trial, John Casteel testified, as did Surveyor for the plaintiffs, and Charles Lammers testified for the defendant, as did another surveyor who had not conducted any

4

of the surveys of the relevant properties or the boundary line. The Lammerses sought to have the action dismissed and then moved for a directed verdict, even though it was a bench trial. The motions were denied, and the trial court granted all of the relief requested by the Casteels, finding Surveyor's 2008 survey to be "a more credible determination of the location of the County Road and the Boundary than the 1979. . . survey." The judgment also granted the injunctive relief requested and widened the easement to forty feet, finding that widening the private road by five feet on the Lammers side would be less expensive and easier than widening the road on the Casteel side, which would require "fill material, retaining walls and culverts." This appeal follows.

## Statute of Limitations

The Lammerses' first point on appeal is that the trial court erred in denying their motion to dismiss and in denying their motion for directed verdict because the Casteels' action to quiet title is barred by the ten-year statute of limitations in section 516.010. This point on appeal violates Rule 84.04 and is multifarious in that it alleges two separate errors with two different standards of review. "Multifarious points preserve nothing for review." *Steiner v. Stribrny*, 677 S.W.3d 833, 839 n.3 (Mo. App. W.D. 2023). However, because we prefer to decide cases on their merits when we can readily discern the independent claims of error, we will review this point *ex gratia*. *See Id.*

**Motion to dismiss:**

The standard of review for a court-tried quiet title action is the same as for any other court-tried case. *McCord v. Gates*, 159 S.W.3d 369, 373 (Mo. App. W.D. 2004). Therefore, we will affirm the judgment of the trial court unless there is no substantial

5

evidence to support the judgment, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Review of the trial court's ruling on a motion to dismiss is *de novo*. *Basye v. Fayette R-III Sch. Dist. Bd. of Educ.*, 150 S.W.3d 111, 114 (Mo. App. W.D. 2004). To succeed on a motion to dismiss on the affirmative defense of a statute of limitations, it must clearly be established "on the petition's face and without exception that the cause of action is time barred." *Id.*

The basis of the Lammerses' motion to dismiss on statute-of-limitations grounds is as follows:

> Statute of Limitations. Plaintiffs have brought a quiet title action in Count I. This action is barred by the statute of limitations. Specifically, there is a ten (10) year statute of limitations contained in Section 516.010, RSMo to bring a quiet title action. Therefore, for a quiet title action to be timely, it must be filed within ten (10) years of the date the plaintiff, or someone under whom he or she claims, had possession of, or record title to, the disputed property. Plaintiffs have had possession of, or record title to the property in question since prior to 1993. (internal citations omitted).

By the Lammerses' own language in their pleadings, the Casteels currently own and possess the Casteel property, and their action was therefore filed within ten years of their having possessed or held title to the property. This encapsulates the Casteels' argument below and on appeal.

Indeed, section 516.010 requires that the plaintiff "was seized or possessed of the premises in question[ ] within ten years before the commencement of such action[,]" not that the plaintiff *first obtained* possession or title within ten years of the commencement of the action. *Eckel v. Eckel*, 540 S.W.3d 476, 484 (Mo. App. W.D. 2018), also favors

6

the Casteels' interpretation.  In *Eckel*, the plaintiffs had lost possession in 2001, and title

had transferred in 2003; this Court found that "no plaintiff in this case has been seized or

possessed of the Property since 2003, at the very latest." *Id.*  *Hooks v. Spies*, 583 S.W.2d

569, 573 (Mo. App. E.D. 1979), also counts the ten-year period for statute of limitations

purposes from when the property owner lost possession of the property. ("Plaintiffs and

their mother had record title and the evidence does not show possession in another until

less than ten years prior to the filing of the action in 1976.").  The motion to dismiss

makes no allegations as to when, if ever, the Casteels were alleged to have ceased

possession of the easement.  Accordingly, the trial court did not err in denying the motion

to dismiss on this basis.

**Motion for directed verdict:**

The Lammerses also claim that the trial court erred in denying their motion for

directed verdict after the presentation of evidence at the trial.  "The appellate standard of

review for denial of a motion for directed verdict is whether the non-moving party

submitted substantial evidence that tended to prove the facts essential to its claim." *Gill

Const., Inc. v. 18ᵗʰ & Vine Auth.*, 157 S.W.3d 699, 712 (Mo. App. W.D. 2004).  "The

evidence is viewed in the light most favorable to the non-moving party, affording the

non-moving party all reasonable inferences from the evidence and disregarding the

moving party's evidence that contradicts the non-moving party's claims." *Id.*

The evidence at trial was that the Casteels obtained their property in 1993 via a

deed that described the boundary line between the Casteel and the Lammers properties as

"with the center of the county road."  However, John Casteel testified that the fencing that

7

the Lammerses erected was not originally right up against the private roadway but was back a way off of the road; the fencing moved around over time.[6] The inference from this is that initially there was no dispute between the parties as to the boundary line or easement for the roadway; the dispute arose sometime later. Also, John Casteel testified that at some point the Casteels were informed that UPS would no longer come to the Casteel property, and someone from the fire department told Casteel that a fire truck could not get to the property on the private roadway. No dates were established for these events in the testimony and evidence. Accordingly, there was no basis to grant a motion for directed verdict on the basis that the Casteels had been "seized or possessed of the premises in question" within ten years of the bringing of the action.

Point I is denied.

### Form of the Action

The Lammerses' second point on appeal is that the trial court erred in denying their motion to dismiss and in denying their motion for directed verdict because the petition failed to state a claim for quiet title in that quiet title is not the proper cause of action for a boundary line dispute; rather, ejectment is the proper cause of action. The second point on appeal suffers from the same Rule 84.04 defect as the first point on appeal. It is multifarious and preserves nothing for review. *See Steiner*, 677 S.W.3d at 839 n.3. Again, we use our discretion to review these issues *ex gratia.*

---

[6] Although Lammers testified that he erected the fencing against the wall in 2008, Surveyor testified that he did not see any fencing when he conducted the survey in 2008, and John Casteel testified that the fencing moved over time. Our standard of review dictates that we view any conflicting evidence in favor of the non-moving party, which is the Casteels.

**Motion to Dismiss:**

Review of the trial court's ruling on a motion to dismiss is *de novo*. *Basye*, 150 S.W.3d at 114. "To survive a motion to dismiss, a plaintiff must allege facts that meet the elements of a recognized cause of action, or of a cause of action that might be adopted in that case." *Riley v. Riley*, 340 S.W.3d 334, 337 (Mo. App. W.D. 2011) (internal quotation omitted). In this case, the Casteels alleged in their petition that:

> Historically, a public county road (the "County Road") ran along the property line between what is now the Casteel Property and the Lammers Property.
>
> The centerline of the County Road served as the boundary line between the Casteel Property and the Lammers Property.
>
> For example, a 1985 legal description for a portion of the Lammers Property refers to the boundary line as being "along the Centerline" of the County Road. . . .
>
> The Casteel Property was formerly owned by [Casteel predecessors]. In the[ir] warranty deed recorded at Book 348, Page 311 of the Real Property Records of Boone County, Missouri, the boundary line was also described in the surveyor's legal description as running "with the center of public county road…."
>
> \* \* \*
>
> In 1979, the Casteel Property was included as part of a re-survey of the [predecessors'] property and the re-survey described the boundary as being "thence along an old roadbed."
>
> Upon information and belief, the Lammers[es] contend that this re-survey changed the boundary from the center of the County Road to the north edge of the County Road such that the Lammers[es] contend that the Lammers Property includes all of the old county roadbed.
>
> The Lammers[es] and the Casteels therefore respectfully disagree on the location of the boundary line between their respective properties.

9

The Lammerses moved for dismissal for failure to state a claim, stating only, "In *Hall v. Allen*, 771 S.W.2d 50, 52 (Mo. banc 1989), the Supreme Court of Missouri ruled that a quiet title action is not the proper remedy in determining the location of a disputed boundary line. Rather, the proper remedy is an ejectment action." The Casteels responded by citing *McCord v. Gates*, 159 S.W.3d 369, 374 (Mo. App. W.D. 2004), holding that a quiet title action was appropriate to resolve a boundary dispute if the parties disagreed on respective legal descriptions for the properties at issue. Also instructive is *Hooks*, 583 S.W.2d at 571. *Hooks* held that where "there is an ambiguity in the description of the land intended to be conveyed, the identity of the property must be gathered from the intention of the parties as shown by the instrument itself and the accompanying circumstances, such as those surrounding and connected with the parties and the land at the time." (internal quotation omitted). In this case, the Casteels had alleged that the parties disagreed on the location of the boundary in the legal descriptions of their properties, since the original "County Road," the center of which was the reference for the property boundary line and the easement, no longer exists, and surveys had caused the parties to have differing views on the location of the property line as described in the legal descriptions.

The quiet title statute, section 527.150.1 states:

Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate,

10

>**and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property.**

(emphasis added). Because the parties disputed the meaning of the property boundary line and easement as set forth in the legal descriptions and relied on competing surveys, the Lammerses failed to establish that this matter could not be decided in a quiet title action as a matter of law as pleaded.

**Motion for Directed Verdict:**

After the close of evidence, the Lammerses also moved for a directed verdict on the ground that a boundary dispute could not be settled in an action to quiet title but required an action in ejectment. Our review is to determine whether the Casteels, as the non-moving party, submitted substantial evidence that tended to prove the facts essential to their claim for quiet title. *See Gill Const., Inc.*, 157 S.W.3d at 712.

The Casteels' position is supported by Missouri law; an action for quiet title may be appropriate for a boundary dispute when the legal descriptions of the property are in question. *See McCord*, 159 S.W.3d at 374. At trial, evidence was presented that the competing surveys and various conveying deeds utilized different language to describe the boundary line between the properties. While the original 1904 survey described the property boundary as being "thence with the center of the county road," and that survey was used to convey the Casteel property to the Casteels, a 1959 deed transferring the Lammers property to Jacqueline Lammers's father described the Lammers property as "lying south of the new county road." And Surveyor testified at trial that the 1979 survey, done before the Lammerses acquired their property, established a different

11

boundary line than did the original 1904 survey because the 1979 survey failed to account for the curves in the road. Indeed, the Lammerses contended at trial that the old county road had changed over time. Accordingly, there was dispute in the evidence as to what the words in the property descriptions meant; the trial court resolved the differences, determining that Surveyor's survey and testimony were more credible than other surveys that had been conducted. Due to the factual disputes as to what the property descriptions meant, the quiet title action was appropriate, and the trial court did not err in refusing to grant a directed verdict on the basis that quiet title was not a proper cause of action in this case.

Point II is denied.

### Expanded Easement

The Lammerses' third point on appeal is that the trial court erred in granting the Casteels' action for an expansion of the easement for a private road to forty feet pursuant to section 228.342. As previously stated, in court-tried cases such as this, we must affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law. *Murphy*, 536 S.W.2d at 32. Although not explicit in their point on appeal, it appears that the Lammerses are arguing either that the Casteels did not present substantial evidence that there was a strict necessity to warrant widening the private road or that the trial court abused its discretion in widening the easement to allow the private road to be widened partially on the Lammerses' side of the easement. In either case, we disagree.

12

Section 228.342 provides that "[a] private road may be . . . widened in favor of any owner or owners of real property for which there is . . . insufficiently wide access, from such property to a public road if the private road sought to be . . . widened is a way of strict necessity." Strict necessity to widen the private road includes the owner's ability "to utilize the property for the uses permitted by law." *Id.*

The testimony at trial was that UPS and emergency services had both notified the Casteels that they could not reach their property by utilizing the current private road because the road was too narrow. Compounding the situation was that the Lammerses had erected fencing that, even by their own expert's testimony, and even according to their proffered survey, extended into and partially blocked the current easement.

Access to delivery of goods or services to a residence that does not have direct access to a public road is clearly a use permitted by law. However, the ability to have police, fire, and ambulance services access a residence is even a greater need. "Once strict necessity is established, it is for the court to determine the issue of the general location of the private road." *Kirkpatrick v. Webb*, 58 S.W.3d 903, 908 (Mo. App. S.D. 2001) (internal quotation omitted). The road need not be placed where either party would most like it to be placed, and cannot be a matter of mere convenience; rather, it "must be situated so as to do as little damage or injury and cause as little inconvenience as practicable to the owners of the land over which it will pass . . . . The private road must be one that is reasonable and practical." *Id.* (internal quotation omitted).

The Lammerses argued that the existing private road was less than the thirty feet across for which the existing easement provided. Therefore, they argued that if the

13

Casteels chose to make the private road wider, they could do so on the Casteels' side of the present boundary line. However, the Casteels presented testimonial and photographic evidence that the terrain on the respective sides of the existing private road was such that:

> widening the Easement on the [north side] would require fill material, retaining walls and culverts which would cost anywhere between $10,000 and $30,000. Conversely, widening the road by five feet on the Lammers side would cost a couple of thousand dollars at the most and would only require a couple of loads of gravel. Finally, the Court notes that the fence near the existing driveway [some of which lay within the existing easement] is not used for restraining cattle, consists only of posts and one or two strands of wire and can be moved back five feet very easily.

Surveyor also testified that, as far as easements go, "most counties prefer 40 [feet], which would allow plenty of room for a proper roadbed and drainage and possibly some utility services coming in." Surveyor acknowledged that a forty-foot easement was the "gold standard" and was better for deliveries and emergency service vehicles. And the Lammerses' expert testified that most counties would ask for a "66-foot wide roadway, right-of-way in this day and age."

Considering the evidence in the light most favorable to the judgment, we hold the trial court did not err in finding that the Casteels had established strict necessity to widen the private road, nor do we find that the trial court abused its discretion in allowing part of the widening to occur on the Lammerses' side of the now forty-foot easement.

14

## Conclusion

For all of the above-stated reasons, we affirm the judgment of the trial court.

_____
Gary D. Witt, Chief Judge, Presiding

All concur